602 So.2d 1310 (1992)
PHILLIPS & JORDAN, INC., Appellant,
v.
STATE of Florida, DEPARTMENT OF TRANSPORTATION, Appellee.
No. 91-1614.
District Court of Appeal of Florida, First District.
June 23, 1992.
*1311 F. Alan Cummings and Mary M. Piccard, Cummings, Lawrence & Vezina, P.A., Tallahassee, for appellant.
Thornton J. Williams, Gen. Counsel, Gregory G. Costas, Asst. Gen. Counsel, Dept. of Transp., Tallahassee, for appellee.
PER CURIAM.
Appellant Phillips and Jordan (P & J) and appellee Florida Department of Transportation (DOT) entered into a contract whereby P & J was to construct a fence along an estimated 71 miles of Interstate I-95 in Brevard, County. The project plans also provided for the clearing and grubbing of a ten-foot-wide strip within which the fence was to be located. The standard bid form used by P & J to bid the contract specified that "all work is to be done in accordance with the plans, specifications, and special provisions of the State of Florida Department of Transportation." The parties stipulated to the following pertinent facts: (1) the contract included provisions for clearing and grubbing work; (2) bidders were *1312 required to submit a unit price per acre for the clearing and grubbing; (3) the approximate amount of clearing and grubbing work was 179 acres; (4) the 179 acre estimate was derived by multiplying 10 feet times the estimated length of the project and converting the resulting square footage into acreage; (5) P & J submitted the lowest bid at $4,200.00 per acre for the clearing and grubbing work; (6) P & J satisfactorily completed the project; and (7) the contract did not specify the type or size of equipment to be used for the clearing and grubbing work.
Upon completion of the project, P & J hired a surveyor to verify the amount of fence erected and the number of acres cleared and grubbed. P & J then requested payment for the actual work performed by it at the unit prices bid. The actual length of the fence erected was slightly less than the project estimate. Accordingly, P & J was paid based on the price per unit. With respect to the clearing and grubbing work, P & J claimed that the density of the growth to be cleared made it necessary at times to use heavy duty clearing equipment with minimum twelve-foot-wide cutting blades. As a result, the area actually cleared, in some locations, exceeded the ten-foot width specified by the project plans. At completion of the project, according to P & J's survey, the area actually cleared and grubbed measured 216.69 acres. DOT, however, refused to pay P & J for the acreage actually cleared. P & J filed suit claiming entitlement to payment for the work actually performed under the contract.
Appellee DOT filed a motion for summary judgment. A hearing on DOT's motion was held on April 17, 1991. The trial court considered the pleadings, affidavits, depositions and arguments of the parties before granting DOT's motion for summary judgment. Among the pertinent and undisputed facts adduced were the following. Before submitting its bid on the project, P & J sent its vice president, Benjamin R. Turner and assistant project manager, Kenneth A. Campbell, to view the project site by helicopter. Turner admitted that his observation of the site indicated that heavy equipment would be needed for portions of the clearing work because of the density of the growth to be cleared, and in order to achieve the minimum daily production necessary to meet the construction schedule. Turner also admitted that the equipment required for the job was equipped with minimum width blades of twelve feet, and was most likely owned by P & J prior to entering into the contract. In his deposition testimony, Turner stated although he had had discussions with DOT personnel regarding the clearing of an area in excess of ten feet wide, he could not recall if he was led to believe that he would be compensated for such clearing.
Mr. Campbell's deposition testimony indicates that after informing DOT officials that it was necessary to clear more than a ten-foot width at times, the officials permitted such excessive clearing with instructions to keep the clearing to a minimum. No mention of additional compensation was made. Thereafter, Campbell had another meeting with DOT officials wherein he asked for additional compensation for areas cleared in excess of the ten-foot width. DOT officials informed Campbell that they did not agree with his interpretation of the contract under which he claimed payment due for the actual area cleared, rather than for a ten-foot wide area. Thus, DOT officials told Campbell that there would be no extra compensation for the area cleared in excess of ten feet. Campbell conceded that no DOT employee actually requested or directed him to clear an area in excess of ten feet wide.
On appeal, appellant relies first on the doctrine of constructibility to claim that the project could not be performed according to the plans and specifications provided, and that appellant is therefore entitled to compensation for the area actually cleared. Appellant also claims that the contract expressly provides for compensation for the area actually cleared. We find appellant's arguments unpersuasive for the following reasons.
The doctrine of constructibility (or *1313 the Spearin[1] doctrine) holds a hiring party liable for unanticipated construction costs incurred due to a latent defect in the project plans or specifications. However, we find the constructibility doctrine to be inapplicable to the facts of the case at bar. Even assuming that the clearing and grubbing portion of the contract was inconstructible as planned insofar as the equipment required was a minimum of twelve feet in width, such was not a latent defect in the job specifications. Appellant P & J had availed itself of the opportunity to inspect the job site, knew of the site conditions, knew of the type of equipment it would subsequently use at the site, and knew that its equipment of choice would clear an area in excess of ten feet in width. P & J submitted its bid in contemplation of these facts, and cannot now claim the existence of a latent defect in the job specifications such as would warrant the application of the implied warranty of constructibility.[2]
We are likewise unpersuaded by appellant's argument that it is entitled to payment for the area actually cleared because the contract is a unit price contract predicated on payment for work actually performed. More precisely, the instant contract contemplates payment for work actually performed within the parameters of the job specifications. To be sure, a unit price contract provides for payment of the actual amount of work done or material supplied where the precise amounts needed are not known at the inception of the project. In the instant case, however, the only variable contemplated by the job specifications was the length of the area to be cleared and grubbed, not the width of such area. Furthermore, appellant was possessed of a contractual means to assert its claim for payment for work performed outside the specified ten-foot wide area. Appellant could have sought written authorization for payment for such work, in effect, a reformation of the contract, under a contractual provision providing for such a reformation where it appears necessary. In fact, under the terms of the contract, appellant is precluded from seeking payment for work performed outside the contractual specifications without first seeking a written reformation of the contract. Therefore, appellant's claim is barred by the express terms of the contract.
The material facts necessary to resolution of the instant case are not disputed. The trial court correctly granted summary final judgment in favor of appellee DOT.
AFFIRMED.
SHIVERS, MINER and WOLF, JJ., concur.
NOTES
[1] United States v. Spearin, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166 (1918).
[2] Furthermore, we do not construe the trial court's order to bar appellant's claim under the doctrine of sovereign immunity because it is based on an implied covenant of the contract rather than an express term of the contract. Such a view would be erroneous. See Champagne-Webber, Inc. v. City of Fort Lauderdale, 519 So.2d 696 (Fla. 4th DCA 1988). Rather, we construe the trial court's order to bar appellant's claim because it is outside both the express and implied conditions of the contract.