703 So.2d 1049 (1997)
COUNTY OF BREVARD, Petitioner,
v.
MIORELLI ENGINEERING, INC., et al., Respondents.
No. 88842.
Supreme Court of Florida.
October 23, 1997.
Rehearing Denied January 7, 1998.
*1050 E.A. "Seth" Mills, Jr., Hala A. Sandridge, Jeffrey M. Paskert of Fowler, White, Gillen, Boggs, Villareal and Banker, P.A., Tampa, for Petitioner.
Dana G. Toole, Tampa, Robert A. Hingston, Coral Gables, for Respondent.
GRIMES, Justice.
We have for review County of Brevard v. Miorelli Engineering, Inc., 677 So.2d 32 (Fla. 5th DCA 1996), which expressly and directly conflicts with Southern Roadbuilders, Inc. v. Lee County, 495 So.2d 189 (Fla. 2d DCA 1986). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
On January 5, 1993, Miorelli Engineering Inc. ("MEI") contracted with Brevard County ("County") to design and build a spring training facility for the Florida Marlins. MEI began developing the facility. Subsequently, a dispute arose between the County and MEI. The County terminated the contract and withheld amounts due under the contract. MEI sued the County, asserting a variety of claims including a breach of contract claim seeking damages for extra work it had done on the facility which was beyond that described in the contract.[1] In a motion for partial summary judgment, the County argued that the extra work claim was barred by the doctrine of sovereign immunity because the extra work was outside the terms of the express contract and no written change orders, as required by the contract, had been issued authorizing the extra work. The trial court denied the County's motion as to the extra work claims. The Fifth District Court of Appeal affirmed that portion of the order which denied the motion for summary judgment on the claim for damages for extra work.[2]
The legislature has explicitly waived sovereign immunity in tort for personal injury, wrongful death, and loss or injury of property. See § 768.28, Fla. Stat. (1995). Although no express legislative waiver has been granted for contract claims, this Court in Pan-Am Tobacco Corp. v. Department of Corrections, 471 So.2d 4 (Fla.1984), found an implied waiver of sovereign immunity in contract on the premise that because the legislature authorized state entities to enter into contracts, it must have intended such contracts to be valid and binding on both parties. However, we concluded our opinion by stating:
We would also emphasize that our holding here is applicable only to suits on express, written contracts into which the state agency has statutory authority to enter.
Id. at 6.
Subsequently, the Second District Court of Appeal held that under Pan Am, sovereign immunity barred a contractor's claim for payment for additional work where that work was not included in the original contract or any subsequent written instrument. Southern Roadbuilders. Later, in Champagne-Webber, Inc. v. City of Fort Lauderdale, 519 So.2d 696 (Fla. 4th DCA 1988), the case heavily relied upon by the court below, the Fourth District Court of Appeal reasoned that Pan-Am did not preclude a contractor from recovering additional expenses based on a claim of breach of implied covenants or conditions contained within the scope of an express written contract. The court explained:
Virtually every contract contains implied covenants and conditions. For example, every contract includes an implied covenant that the parties will perform in good faith. In construction contract law an *1051 owner has (a) an implied obligation not to do anything to hinder or obstruct performance by the other person, Gulf American Land Corporation v. Wain, 166 So.2d 763, 764 (Fla. 3d DCA 1964), (b) an implied obligation not to knowingly delay unreasonably the performance of duties assumed under the contract, Southern Gulf Utilities Inc. v. Boca Ciega Sanitary District, 238 So.2d 458, 459 (Fla. 2d DCA 1970), cert. denied, 240 So.2d 813 (Fla.1970), and (c) an implied obligation to furnish information which would not mislead prospective bidders, Jacksonville Port Authority v. Parkhill-Goodloe Co. Inc., 362 So.2d 1009 (Fla. 1st DCA 1978).
... It seems neither logical nor within the principles of fairness enunciated in the Pan-Am Tobacco case to construe the restrictive language of that case to mean that the defense of sovereign immunity is waived only for the state's breach of an express covenant or condition of an express, written contract, but that the defense is not waived for the state's breach of an implied covenant or condition of such contract, while the other contracting party remains liable for a breach of both the express and the implied covenants and conditions.
Champagne-Webber, 519 So.2d at 697-98.
While we agree with Champagne-Webber's interpretation of Pan Am, we cannot agree with Champagne-Webber`s further observation that its opinion conflicted with Southern Roadbuilders. Binding the sovereign to the implied covenants of an express contract is quite different from requiring a sovereign to pay for work not contemplated by that contract. See Phillips & Jordan, Inc. v. Department of Transp., 602 So.2d 1310 (Fla. 1st DCA 1992) (distinguishing between a claim for breach of an implied covenant within an express contract and a claim outside both the express and implied conditions of the contract).
Contrary to the court below, we conclude that the instant case falls outside the parameters of Champagne-Webber. In Champagne-Webber, the contractor agreed to construct a bridge for the City of Fort Lauderdale. The city represented to the contractor that the soil at the construction site was sand only. Once work commenced, the contractor discovered that the soil contained both sand and rock. Thus, the key issue was whether the city had misrepresented the soil conditions at the construction site and whether the contractor had justifiably relied on the misrepresentation. In the case at bar, MEI's extra work claims are for work totally outside the terms of the contract. Without a written change order, the doctrine of sovereign immunity precludes recovery of the cost of the extra work.
One final point must be addressed. MEI asserts that the County waived the written change order requirement by directing work changes without following its own formalities. We decline to hold that the doctrines of waiver and estoppel can be used to defeat the express terms of the contract. Otherwise, the requirement of Pan Am that there first be an express written contract before there can be a waiver of sovereign immunity would be an empty one. An unscrupulous or careless government employee could alter or waive the terms of the written agreement, thereby leaving the sovereign with potentially unlimited liability.
Accordingly, we approve the rationale of Southern Roadbuilders and Champagne-Webber. We disapprove Interamerican Engineers & Constructors Corp. v. Palm Beach County Housing Authority, 629 So.2d 879 (Fla. 4th DCA 1993), to the extent that it is inconsistent with this opinion. We quash the decision below and remand the case for further proceedings consistent with this opinion.
It is so ordered.
OVERTON, HARDING and WELLS, JJ., concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion in which KOGAN, C.J., and SHAW, J., concur.
ANSTEAD, Justice, concurring in part and dissenting in part.
For the reasons expressed below, I conclude that both waiver and estoppel may sometimes be applied against the sovereign, and as a consequence, the majority's opinion, *1052 to the extent it addresses these issues, is flawed. I am most concerned that we are intervening to overturn an order denying a motion for summary judgment at a point in the proceedings when the facts have not been fully developed. We are, in essence, rendering an advisory opinion, largely in a factual vacuum.
The majority opinion holds that the doctrine of sovereign immunity precludes recovery, as a matter of law, of the cost of the contractor's extra work under Pan-Am Tobacco Corp. v. Department of Corrections, 471 So.2d 4 (Fla.1984).[3] The majority opinion states:
MEI asserts that the County waived the written change order requirement by directing work changes without following its own formalities. We decline to hold that the doctrines of waiver and estoppel can be used to defeat the express terms of the contract. Otherwise, the requirement of Pan Am that there first be an express written contract before there can be a waiver of sovereign immunity would be an empty one. An unscrupulous or careless government employee could alter or waive the terms of the written agreement, thereby leaving the sovereign with potentially unlimited liability.
Majority op. at 1051. Hence, without citation to authority, and with virtually no analysis, the majority holds that the doctrines of waiver and estoppel cannot be applied to the sovereign in any disputes arising out of a contractual relationship.[4] It is interesting to compare appellate opinions and note how quickly the perspective may change with the specific circumstances being considered. For example, compare the majority's language here with that of the First District, in another case involving the application of the doctrines of waiver and estoppel to the government:
If the rule were not as so announced a governmental agency could purposefully fail to comply with some statutory prerequisite to the execution of a contract, avail itself of the benefits of that contract until such time as it arbitrarily and capriciously chose to ignore it, and then do so with no fear that any court could compel it to honor its agreement. It is just such a theory that the City asserts in this case and it is because of such conduct on the part of unscrupulous parties that the doctrine of equitable estoppel has become engrained as a cornerstone of the jurisprudence of a majority of the states of this nation.
Killearn Properties, Inc. v. City of Tallahassee, 366 So.2d 172, 179 (Fla. 1st DCA 1979).
Initially, I disagree with the majority's contention that allowing waiver and estoppel *1053 in this situation is somehow incompatible with Pan Am's requirement that an implied waiver of sovereign immunity applies only to "suits on express, written contracts into which the state agency has statutory authority to enter." 471 So.2d at 6. Nobody disputes that Pan Am's requirement is the essential predicate to any waiver of sovereign immunity. However, the issue is the State's action after an express, written contract has been validly entered into and is being performed. A logical extension of Pan-Am's reasoning is that since the legislature "authorized state entities to enter into contracts ... [and] intended such contracts to be valid and binding on both parties," majority op. at 1050, it must have also intended that those equitable doctrines that have been historically attached to the law of contracts are equally applicable to governmental contracting parties. There are no words of limitation in Pan Am beyond those quoted above which would indicate otherwise. Therefore, subsequent to the formation of a valid contract between the State and another contracting party, waiver and estoppel may be asserted against the State just as they could against any other contracting party. Nothing in Pan Am supports a different conclusion.
Further, this Court has consistently recognized that a contracting party may waive, either orally or by conduct, a stipulation in a construction contract providing that alterations or extra work must be authorized by a written change order. See, e.g., Charlotte Harbor, 56 Fla. at 227, 48 So. at 217. See also Pan American Engineering Co., v. Poncho's Construction Co., 387 So.2d 1052, 1053 (Fla. 5th DCA 1980); Doral Country Club, Inc. v. Curcie Bros., Inc., 174 So.2d 749, 750-51 (Fla. 3d DCA 1965).[5] In Florida, we have also held that equitable estoppel may be applied against the sovereign in limited circumstances, when justified by the facts.[6] In *1054 New York Life Ins. Co. v. Oates, 122 Fla. 540, 166 So. 269 (1935), this Court stated that "[t]he technicalities incident to estoppels (especially in pais) are gradually giving way to considerations of reason and practical utility; and the courts of the present day seem disposed to give force and efficacy to a doctrine which is based upon principles of justice and the purest morality." Id. at 558-59, 166 So. at 276. Similarly, in City of Winter Haven v. State ex rel. Landis, 125 Fla. 392, 170 So. 100 (1936), this Court explained that "the American citizen bows his knee to no earthly power save the law of the land; and even the State itself, as a litigant, is not superior to its own laws and to those well settled principles of jurisprudence which govern the administration of justice according to law in its courts."[7]Id. at 413, 170 So. at 108. Those public policy considerations support the possible application of an estoppel in this case as "justified by the facts," see Florida Livestock Bd. v. Gladden, 76 So.2d 291, 293 (Fla.1954), or because the equities here involve a "special circumstance." Gay, 60 So.2d at 27.
In Killearn Properties, the First District, while recognizing that "the doctrine of estoppel is no stranger to the jurisprudence of Florida," quoted an informative passage by the Supreme Court of California on the application of estoppel against the government. The district court wrote:
It is settled that "the doctrine of equitable estoppel may be applied against the government where justice and right require it." Correlative to this general rule, however, is the well-established proposition that an estoppel will not be applied against the government if to do so would effectively nullify "a strong rule of policy, adopted for the benefit of the public." The tension between these twin principles makes up the doctrinal context in which concrete cases are decided.
....
... After a thorough review of the many California decisions in this area, as well as a consideration of various out-of-state decisions, we have concluded that the proper rule governing equitable estoppel against the government is the following: The government may be bound by an equitable estoppel in the same manner as a private party when the elements requisite to such an estoppel against a private party are present and, in the considered view of a court of equity, the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel.
366 So.2d at 179 (quoting City of Long Beach v. Mansell, 3 Cal.3d 462, 91 Cal.Rptr. 23, 45-48, 476 P.2d 423, 445-48 (1970)). These observations are, of course, consistent with our own observations on the law of estoppel as applied to governments. Further, we have applied estoppel to the government in a variety of other contexts, including zoning and land use disputes.
In summary, I would approve the Fifth District's opinion and allow this case to proceed past the summary judgment stage. While the government may ultimately prevail, we should not intervene at such an early stage of the proceedings and before the facts have been fully developed. The majority's opinion does not analyze the issues of waiver or estoppel separately, nor does it use the framework this Court has previously developed for analyzing these issues. The majority's justification for its holding, the protection of public funds from negligent or unscrupulous government employees, seems unconvincing when one considers that we have already held that waiver *1055 and estoppel may only be applied in limited circumstances against the government.
KOGAN, C.J., and SHAW, J., concur.
NOTES
[1] The validity of the remaining claims is not before us.
[2] The Fifth District Court of Appeal accepted jurisdiction of this nonfinal order based on Department of Transportation v. Wallis, 659 So.2d 429 (Fla. 5th DCA 1995), which has since been disapproved. Department of Educ. v. Roe, 679 So.2d 756 (Fla.1996).
[3] Pan Am held that sovereign immunity from contractual suits is only waived to suits on express written contracts into which the state agency has the authority to enter. 471 So.2d at 6.
[4] Waiver has been defined as "the intentional relinquishment of a known right." Gilman v. Butzloff, 155 Fla. 888, 891, 22 So.2d 263, 265 (1945). See also American Somax Ventures v. Touma, 547 So.2d 1266, 1268 (Fla. 4th DCA 1989); Taylor v. Kenco Chemical & Mfg. Corp., 465 So.2d 581, 587 (Fla. 1st DCA 1985). Waiver does not arise from forbearance for a reasonable time, but may be inferred from conduct or acts "putting one off his guard and leading him to believe that a right has been waived." Gilman, 155 Fla. at 891, 22 So.2d at 265. Furthermore, a party may waive any right to which he is legally entitled, "whether secured by contract, conferred by statute, or guaranteed by the Constitution." Id. Waiver has also been described as "where one in possession of any right whether conferred by law or by contract, and of full knowledge of the material facts, does or forbears the doing of something inconsistently with the existence of the right, or of his intentions to rely upon it; thereupon he is said to have waived it, and he is precluded from claiming anything by reason of it afterwards." Charlotte Harbor & N. Ry. Co. v. Burwell, 56 Fla. 217, 229, 48 So. 213, 216 (1908) (quoting Bishop on Contracts § 792 (2d Enlarged ed.)).

Estoppel is the doctrine "by which a person may be precluded by his act or conduct, or silence when it is his duty to speak, from asserting a right which he otherwise would have had." Taylor, 465 So.2d at 586 (quoting Black's Law Dictionary 483, 495 (5th ed.1979)). The distinction between estoppel and waiver is slight, yet unlike waiver, "an essential to estoppel is a reliance on the words or conduct of a party which causes a detrimental change in position for the party so relying." Id. at 587. The doctrine of estoppel (or "estoppel in pais" or "equitable estoppel") is "based upon principles of justice and the purest morality." See Steen v. Scott, 144 Fla. 702, 713, 198 So. 489, 493 (1940); New York Life Ins. Co. v. Oates, 122 Fla. 540, 558-59, 166 So. 269, 276 (1935).
[5] Further, the weight of authority from other states also suggests that the government can waive a written change order requirement in public works contracts. Moreover, most states have no bar against suing the sovereign in contract actions. In this regard it has been noted:

While it might be plausibly argued that stipulations in contracts for public work requiring written orders for alterations and extras should be more strictly enforced and that more rigid rules should protect the government against the effect of a waiver of the provisions than are enforced and applied to private contracts, such arguments find little if any direct support in the decided cases. It is established generally that in the absence of a statute, a government or municipality may, when acting through its proper officers or representatives, waive or agree to the modification of a stipulation in public works requiring that alterations and extras be authorized or ordered in writing in order to entitle the contractor to recover additional compensation therefor. Accordingly, it is widely held that the provision in a public building or construction contract that alterations or extras must be ordered in writing can be avoided by the parties to the contract where their words, acts, or conduct would amount to a waiver or modification of such provision, or where the public entity by acts or conduct of its proper officer or representative is estopped to rely on it, although a contrary conclusion has apparently been reached in at least one case involving a contract under seal.
65 Am.Jur.2d Public Works and Contracts § 193 (1972) (citations omitted) (emphasis added). The author of this same treatise explains that:
Although most of the cases recognizing the possibility of a waiver or modification of a stipulation or provision requiring a written order for extras or alterations have not made any general distinction between public contracts and private contracts respecting such a waiver or modification, in some cases it has been explicitly recognized that such a stipulation or provision should be more strictly enforced in public contracts that in private contracts, and that therefore in the case of public contracts more rigid rules should be applied in determining whether such a stipulation or provision has been waived or modified.
Id., § 195 (citations omitted).
[6] See Florida Livestock Bd. v. Gladden, 76 So.2d 291, 293 (Fla.1954) (livestock board estopped from asserting it was without authority to extend the effective date of regulation when it advertised that it would extend the effective date of regulation); Gay v. Inter-County Tel. & Tel. Co., 60 So.2d 22, 27 (Fla.1952) (unusual delay in collecting stamp taxes was not an "unusual circumstance" justifying application of estoppel against the State); Daniell v. Sherrill, 48 So.2d 736, 739 (Fla.1950) (State's acquiescence in the possession and improvement of property which it conveyed fifty years earlier estopped State in suit to quiet title to property); City of Winter Haven v. State, 125 Fla. 392, 413, 170 So. 100, 108 (1936) (State estopped from attacking the validity of a municipal corporation which the State had recognized for a number of years); Camp v. McLin, 44 Fla. 510, 531-32, 32 So. 927, 933 (1902) (State not estopped from denying validity of contract which was entered into by its agents without the authority to do so); Reedy Creek Improvement Dist. v. State Dept. of Envtl. Regulation, 486 So.2d 642, 647 (Fla. 1st DCA 1986) (estoppel applied against the State to require issuance of permit when facility relied on preliminary approval of project and incurred significant expenditures). A correlative to this rule is that "it is fundamental that the doctrine of estoppel will not apply to `transactions that are forbidden by statute or that are contrary to public policy.'" Reedy Creek, 486 So.2d at 647.
[7] The Supreme Court of Wisconsin has stated that "[i]t is ... quite well settled that, when the state makes itself a party to an action or to a contract or grant in its proprietary capacity, it is subject to the law of estoppel, as other parties litigant or other contracting parties." Chicago, St. Paul, Minneapolis & Omaha Ry. Co. v. Douglas County, 134 Wis. 197, 114 N.W. 511, 514 (1908).