786 So.2d 665 (2001)
TOWN OF PALM BEACH, a municipal corporation of the State of Florida, Appellant,
v.
RYAN INCORPORATED EASTERN, a Florida corporation, Appellee.
No. 4D99-2813.
District Court of Appeal of Florida, Fourth District.
June 13, 2001.
Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A. and John S. Trimper of Jones, Foster, Johnston & Stubbs, P.A., West Palm Beach, for appellant.
Mary M. Piccard and Joseph W. Lawrence II of Vezina, Lawrence & Piscitelli, P.A., Tallahassee, for appellee.
DELL, J.
The Town of Palm Beach (the Town) appeals from a final judgment in favor of *666 appellee, Ryan Incorporated Eastern, for damages in the amount of $310,476.00. The jury awarded the damages against the Town for breach of a construction contract. The Town contends the trial court should have granted its motion for a directed verdict on the grounds of sovereign immunity. We affirm.
The Town and appellee entered into a contract for the construction of storm sewer, sanitary sewer, and water main pipes on Jungle Road, El Vedado Road, and Pelican Lane. The Town hired an outside engineer to design and prepare the specifications for the project. The Town prepared the bid documents, including the contract, the invitation to bid, instruction to bidders, and the general conditions governing the project. The bid documents required bidders, before submitting a bid, to visit the site to become familiar with the nature and extent of the work contemplated by the contract. A representative of appellee did a pre-bid inspection. However, it was not until after the contract was awarded that appellee's pipe division manager visited the site and noticed that the S curve on Pelican Lane appeared to be sharper than the plans provided. According to appellee's pipe manager, when his concerns were discussed at a pre-work meeting, the Town's project engineer responded that the design had been checked and that it was fine. The parties presented evidence concerning the type of pipe used for the project and the construction techniques required to accommodate the laying of the pipe as a result of the sharper curves on Pelican Lane.
The parties also presented conflicting evidence concerning the operation of equipment needed to de-water the pipe trenches. Electrical pumps were preferred because they could be operated on a twenty-four hour a day basis. The initial contract provided that the Town would install a cable from a nearby transformer to the pump station and erect a panel at the pump station to provide electricity for de-watering. Later, the Town amended the proposed contract to make the installation of the electrical service conduit and pull boxes part of the contractor's responsibility. After the Town awarded the contract to appellee, but before work commenced, the Town's job representative informed appellee that he forgot to call Florida Power and Light to order the installation of a transformer from which appellee could run electricity to operate the pump. He said it would take seven to eight weeks to get it in place. Appellee presented testimony that as a result, it was required to use diesel pumps and that due to the noise from the diesel pumps, the Town would not permit it to run the pumps at night.
Appellee completed construction, but according to the Town's civil engineer, when the Town performed an infiltration test, the project "failed miserably" due to leaks in the pipes. Appellee began repairs, but the Town required appellee to cease operations for three months, because of the tourist season. When the pipes were uncovered it was learned that they had shifted due to water in the trenches, and that the most significant shifts had occurred at the curve in Pelican Lane. Appellee also presented evidence that the pipes required repair because of the Town's defective design, and because the pipes had to be laid in wet trenches due to the Town's failure to provide electricity and its refusal to allow appellee to run its diesel pumps twenty-four hours a day. Appellee also maintained that the pipes it provided were in accordance with the plans and specifications.
Initially, appellee attempted to repair the pipes by a process known as "chemical grouting." However, after appellee began *667 the chemical grouting process, the Town refused to accept it. The Town hired its outside engineer to oversee the repair work. Thereafter, repairs were made by putting a "concrete collar" around each leaking pipe joint. The Town's engineer decided which pipes would be repaired with a concrete collar. Appellee did not submit a change order for the cost of the repair work.
After the work was completed, appellee billed the Town for $386,934.81 for the repairs and other items. When the Town failed to pay, appellee filed suit for breach of contract. At the close of all of the evidence, the Town moved for a directed verdict. The trial court denied the Town's motion and the jury returned a verdict in favor of appellee in the amount of $310,476.00.
The Town contends that it was entitled to a directed verdict based on sovereign immunity because appellee failed to obtain a change order before beginning repairs to the leaking sewer pipes. The Town relies upon County of Brevard v. Miorelli Engineering, Inc., 703 So.2d 1049 (Fla.1997). In Miorelli, the supreme court held that
[i]n the case at bar, MEI's extra work claims are for work totally outside the terms of the contract. Without a written change order, the doctrine of sovereign immunity precludes recovery of the cost of the extra work.
Id. at 1051.
The supreme court also rejected MEI's argument
that the County waived the written change order requirement by directing work changes without following its own formalities. We decline to hold that the doctrines of waiver and estoppel can be used to defeat the express terms of the contract.
Id.
The Town's reliance on Miorelli is misplaced because the supreme court in Miorelli also approved this court's holding in Champagne-Webber, Inc. v. City of Fort Lauderdale, 519 So.2d 696 (Fla. 4th DCA 1988). The supreme court stated:
the Fourth District Court of Appeal reasoned that Pan-Am [Tobacco Corp. v. Department of Corrections, 471 So.2d 4 (Fla.1984)] did not preclude a contractor from recovering additional expenses based on a claim of breach of implied covenants or conditions contained within the scope of an express written contract. The court explained:
Virtually every contract contains implied covenants and conditions. For example, every contract includes an implied covenant that the parties will perform in good faith. In construction contract law an owner has (a) an implied obligation not to do anything to hinder or obstruct performance by the other person, ... (b) an implied obligation not to knowingly delay unreasonably the performance of duties assumed under the contract, ... and (c) an implied obligation to furnish information which would not mislead prospective bidders....
... It seems neither logical nor within the principles of fairness enunciated in the Pan-Am Tobacco case to construe the restrictive language of that case to mean that the defense of sovereign immunity is waived only for the state's breach of an express covenant or condition of an express, written contract, but that the defense is not waived for the state's breach of an implied covenant or condition of such contract, while the other contracting party remains liable for a breach of both the express and the implied covenants and conditions.

Champagne-Webber, 519 So.2d at 697-98.

*668 While we agree with Champagne-Webber's interpretation of Pan Am, we cannot agree with Champagne-Webber's further observation that its opinion conflicted with Southern Roadbuilders [Inc. v. Lee County, 495 So.2d 189 (Fla. 2d DCA 1986)]. Binding the sovereign to the implied covenants of an express contract is quite different from requiring a sovereign to pay for work not contemplated by that contract.
Miorelli, 703 So.2d at 1050-1051 (citations omitted).
On motion for directed verdict, the evidence and reasonable inferences therefrom must be viewed by the trial court in the light most favorable to the non-movant. Additionally, any conflicts in the evidence must be resolved in favor of the non-movant. Easton-Babcock & Assocs., Inc. v. Fernandez, 706 So.2d 916 (Fla. 3d DCA 1998). It is well established that the trial court should grant a directed verdict to a defendant only when it is clearly apparent that no evidence has been submitted on which the jury could lawfully find a verdict for the plaintiff. Hernandez v. Motrico, Inc., 370 So.2d 836 (Fla. 3d DCA 1979).
We are not persuaded by the Town's argument that the repair work was extra work, outside the contemplation of the contract, that required a change order. The record instead supports appellee's argument that the work performed was in the nature of repair work necessary to bring the project into conformity with the contract and not outside the scope of the work originally contemplated. Additionally, appellee presented substantial competent evidence that the Town breached its contract by failing to provide adequate plans and specifications for the construction of the sewer project, by failing to provide electrical power for the pumping operation, by limiting the time for operation of the diesel-powered pumps, and by delaying the work for three or more months, all of which caused or contributed to the damage.
Accordingly, we hold that the trial judge did not err when it denied the Town's motion for directed verdict, and we affirm the final judgment in favor of appellee.
AFFIRMED.
WARNER, C.J., and HAZOURI, JJ., concur.