DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**THE CITY OF FORT LAUDERDALE,** a Municipal Corporation existing
under the laws of the State of Florida,
Appellant,

v.

**SCOTT ISRAEL,** in his Official Capacity as Sheriff of Broward County,
Appellee.

No. 4D15-1008

[October 14, 2015]

Appeal of a non-final order from the Circuit Court for the Seventeenth
Judicial Circuit, Broward County; William W. Haury, Jr., Judge; L.T. Case
No. CACE 14-001504 13.

Edward A. Dion of Nabors, Giblin & Nickerson, P.A., Fort Lauderdale,
for appellant.

Jonathan M. Streisfeld and David L. Ferguson of Kopelowitz Ostrow
Ferguson Weiselberg, Fort Lauderdale, for appellee.

PER CURIAM.

The City of Fort Lauderdale (the City) appeals a non-final order of the
Seventeenth Judicial Circuit Court that denied its motion for summary
judgment, determining it was not entitled to sovereign immunity. This
Court has jurisdiction. Fla. R. App. P. 9.130(a)(3)(C)(xi) ("Appeals to the
district courts of appeal of non-final orders are limited to those that . . .
determine . . . that, as a matter of law, a party is not entitled to sovereign
immunity."). For the reasons set forth below, we hold that the City was
entitled to sovereign immunity and thus reverse and remand for further
proceedings.

**Background**

The dispute which led to this order is between Scott Israel, as Sheriff of
Broward County (Sheriff), and the City over payment for police dispatch
and other services rendered.

The particular services at issue were provided during fiscal year 2012. Up until late 2009, the agreement between the Sheriff and the City was based on a written contract. That contract required that either Broward County or the Sheriff would pay for the services. After the most recent written contract expired, the Sheriff continued to provide services with Broward County footing the bill. The written contract was never renewed, nor was any other written agreement created. In 2011, Broward County told the City it would stop funding the services. The Sheriff threatened to cancel services unless the City would pay. Over the next year the City made some, but not all, of the payments demanded by the Sheriff.

The Sheriff filed suit alleging breach of contract, unjust enrichment, and open account for the missing payments. The City moved for summary judgment, based in part on an argument that the Sheriff's claims were barred by the doctrine of sovereign immunity.

## Analysis

Review of an order on a motion for summary judgment is *de novo* as to legal rulings. *Sierra v. Shevin*, 767 So. 2d 524, 525 (Fla. 3d DCA 2000). Evidence is viewed in the light most favorable to the non-moving party. *Id.*

Sovereign immunity is the "privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart,* 131 S. Ct. 1632, 1637 (2011). "In Florida, sovereign immunity is the rule rather than the exception." *Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So. 2d 4, 5 (Fla. 1984). But Article X, section 13 of the Florida Constitution allows "[p]rovision[s] [to] be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating."

The Florida Legislature has expressly provided for limited waiver of sovereign immunity in tort through section 768.28, Florida Statutes (2015). Section 768.28(1) provides for the waiver by "the state, for itself and for its agencies or subdivisions." Section 768.28(2) defines "state agencies or subdivisions" as including "counties and municipalities." There are no statutory provisions for sovereign immunity, or its waiver, with regard to contracts. That issue has fallen instead to the courts to address. In *Manatee County v. Town of Longboat Key*, 365 So. 2d 143, 147 (Fla. 1978), the Supreme Court of Florida said that only the legislature has authority to enact a general law waiving sovereign immunity of the state and that any waiver must be clear and unequivocal. *Id.* at 147. Here we are faced with a claim that the common law, instead of a legislative command, waives sovereign immunity.

The City cites *Pan-Am* to support its claim to sovereign immunity. In that case, Pan-Am Tobacco Corporation had entered into a written contract with the Department of Corrections (DOC) to provide vending machines in six correctional facilities. *Pan-Am*, 471 So. 2d at 4. When DOC canceled the contract, Pan-Am sued. *Id.* at 5. DOC moved for partial summary judgment, asserting sovereign immunity. *Id.* The motion was granted. *Id.* Pan-Am appealed and the First District affirmed but certified a question to the Florida Supreme Court on whether the DOC, as a state agency, could assert sovereign immunity as a bar to a breach of contract action after it improperly rescinded an express executory contract with a private vendor who lost profit as a result. *Id.* The Supreme Court quashed the decision of the First District, holding that "where the state has entered into a contract fairly authorized by the powers granted by general law, the defense of sovereign immunity will not protect the state from action arising from the state's breach of that contract." *Id.* The Supreme Court added a qualifier to this holding: "We would also emphasize that our holding here is applicable only to suits on express, written contracts into which the state agency has statutory authority to enter." *Id.* at 6.

The Florida Supreme Court clarified *Pan-Am* in *American Home Assurance Co. v. National Railroad Passenger Corp.*, 908 So. 2d 459 (Fla. 2005), holding that its reasoning did not extend to municipalities because municipalities *already* "have long possessed both the power to execute contracts and the concomitant liability for their breach" as part of their broad authorities. *Id.* at 474. The Supreme Court applied this rationale to hold that a municipal electric utility that had statutory authority to contract with private parties for municipal purposes and enter into an indemnification agreement in its contract could not invoke sovereign immunity to avoid its contractual obligations. *Id.* at 476.

The City distinguishes these authorities by focusing on the express written contracts between municipalities or other state agencies implicated in these decisions. By contrast, it argues that the claims against it sound in implied contract and other equitable grounds. The City then looks to *Champagne-Webber, Inc. v. City of Fort Lauderdale*, 519 So. 2d 696 (Fla. 4th DCA 1988). There, private contractors sued the City of Fort Lauderdale and the trial court found that their claims were founded on theories of implied contract rather than express written contract. It determined therefore that their claims were barred by the defense of sovereign immunity. *Id.* at 696. This Court reversed, holding that the lawsuit had been brought on an express written contract entered into by the City. *Id.* at 697. Therefore, the defense of sovereign immunity did not protect the city from an action for breach of either express or implied covenant or conditions arising out of that written contract. *Id.* at 698; s*ee*

3

*also Cnty. of Brevard v. Miorelli Eng'g, Inc.*, 703 So. 2d 1049, 1051 (Fla. 1998) (approving *Champagne-Webber's* interpretation of *Pan-Am* on this issue); *Town of Palm Beach v. Ryan Inc. E.*, 786 So. 2d 665 (Fla. 4th DCA 2001) (upholding *Champagne-Webber*).

The City argues that in this case the Sheriff's claim is barred by sovereign immunity because it was not based on an express written contract at all. Rather, it was based solely on a theory of implied contract. The City contends that for sovereign immunity to be waived under this line of cases, there would have to have been an express written contract between the Sheriff and the City and the record demonstrates that there was not one.

There is no disagreement in this case as to the lack of a written contract. While *Pan-Am*, *American Home Assurance Co.*, and *Champagne-Webber* all indicate that a municipality may be liable under an express written contract, none indicate that the same would be true for an unwritten one. In fact, *Champagne-Webber* specifically held that actions on implied contracts are barred based on *Pan-Am*. *Champagne-Webber*, 519 So. 2d at 697.[1] Here, with no written contract to defeat the City's sovereign immunity claim, the Sheriff's suit against the City is similarly barred.

**Conclusion**

The aforementioned cases demonstrate that a municipality waives the protections of sovereign immunity only when it enters into an express contract. When an alleged contract is merely implied, however, these sovereign immunity protections remain in force. Therefore, the circuit court erred in denying the City's motion for summary judgment based on sovereign immunity. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

STEVENSON, DAMOORGIAN and FORST, JJ., concur.

---

[1] *See also City of Orlando v. West Orange Country Club, Inc.*, 9 So. 3d 1268, 1271-73 (Fla. 5th DCA 2009) (in a case in which a country club sued the City of Orlando and Orange County on a purported contract to provide reclaimed water, the Fifth District applied *Pan-Am* and found that sovereign immunity served as a basis to bar enforcement of the purported contract because it was never approved nor signed by either party); *City of Miami v. Tarafa Constr., Inc.*, 696 So. 2d 1275, 1277 (Fla. 3d DCA 1977) (holding that a city could not be sued for costs a contractor incurred *before* it entered into a written contract with the city).

*          *          *

*Not final until disposition of timely filed motion for rehearing.*