# Third District Court of Appeal

## State of Florida

Opinion filed March 9, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-553
Lower Tribunal No. 17-802K
_____

**Monroe County,**
Appellant,

vs.

**Ashbritt, Inc.,**
Appellee.

An Appeal from a non-final order from the Circuit Court for Monroe County, Timothy J. Koenig, Judge.

Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, P.A., Jeffrey L. Hochman and Selena A. Gibson (Fort Lauderdale), for appellant.

Moskowitz, Mandell, Salim, & Simowitz, P.A., Michael W. Moskowitz, William G. Salim, Jr., and Ari J. Glazer (Fort Lauderdale); Smith Hawks, P.L., and Barton W. Smith, for appellee.

Before SCALES, LOBREE and BOKOR, JJ.

BOKOR, J.

Along with death and taxes, Florida provides one other certainty—hurricanes. The intensity, duration, and exact location of these terrible forces are left to prediction, prognostication, and a good deal of planning (and prayer). Against this backdrop and in preparation for the upcoming hurricane season, in early summer 2017, appellant, Monroe County, contracted with appellee, Ashbritt, Inc., for disaster response and recovery services. In early September, 2017, Hurricane Irma wrought devastation on the Keys. The County tasked Ashbritt with removal of putrefied waste from temporary sites[1] and hauling debris to locations miles away from the sites chosen by Ashbritt and specified in the contract. Due to the scope of the destruction, the County also contracted with the Florida Department of Transportation to assist with debris removal. The question on appeal turns on whether the agreement between the County and Ashbritt may provide recourse for Ashbritt's claims for extra compensation, as the trial court concluded, or, as the County argues here, whether sovereign immunity bars recovery. As explained below, we agree with the trial court's extensive and well-reasoned analysis concluding

---

[1] Putrefied waste removal is to be distinguished from debris removal. Putrefied waste consists of decomposition of organic matters such as food and other products which deteriorate quickly. Putrefied waste removal involves removing putrefied waste and food from refrigerators and freezers located at temporary sites for transport to landfills.

that factual disputes over the contract terms prevent entry of summary judgment in favor of the County on sovereign immunity grounds.

No one quibbles with the fact that "where the state has entered into a contract fairly authorized by the powers granted by general law, the defense of sovereign immunity will not protect the state from action arising from the state's breach of that contract." Pan-Am Tobacco Corp. v. Dep't. of Corr., 471 So. 2d 4, 5 (Fla. 1984). Things get more interesting when we reconcile this principle with another equally well-settled principle of sovereign immunity as applied to commercial transactions—that the doctrine of sovereign immunity precludes recovery of the cost of extra work where claims for that extra work are "totally outside" the terms of the contract. County of Brevard v. Miorelli Eng'g, Inc., 703 So. 2d 1049, 1051 (Fla. 1997). Therefore, we must examine whether the parties' agreement contemplated Ashbritt's disposal of putrefied waste and Ashbritt's hauling of debris to locations miles farther away than it planned.

Analyzing the doctrine of sovereign immunity as applied to contract-related claims, the Fifth District Court of Appeal explained:

> In this case, the essence of this dispute is whether the original contract specifications and engineering requirements encompassed the work W&J claims was above and beyond that originally required by the contract. If it did, then W&J is entitled to no additional compensation. If it did not, because the appellees required W&J to do the work yet failed to issue a

3

change order as it should have done pursuant to the contract, W&J may be entitled to compensation.

W&J Constr. Corp. v. Fanning/Howey Assocs., 741 So. 2d 582, 584 (Fla. 5th DCA 1999). In W&J, the court concluded that the work involved was not properly characterized as extra work performed "outside" the contract. Id. Therefore, the issue "remain[ed] in dispute," and the court reversed the trial court's order granting summary judgment in favor of the school board. Id. at 585.

The Fourth District Court of Appeal applied a similar analysis, partially reversing the trial court's finding of sovereign immunity on claims related to executed change orders:

> Here, the school board actually issued a change order for the additional work, thereby acknowledging that the required work was not within the scope of the original contract. As in *W&J*, COBAD could perform the work under protest and later bring suit to recover damages for having been required to perform the extra work for an inadequate price. As such, a genuine issue of material fact exists as to whether the price specified in the change order was reasonable.

C.O.B.A.D. Constr. Corp. v. Sch. Bd. of Broward Cnty., 765 So. 2d 844, 846 (Fla. 4th DCA 2000). At the same time, the court, applying Miorelli, recognized that sovereign immunity barred recovery for those claims for "additional compensation for extra work that was not included in the original contract or any subsequent written change order." Id. at 845-46.

4

Ashbritt alleges that the County, like the school boards in C.O.B.A.D. and W&J, acknowledged and required the additional work. Here, Ashbritt submitted a proposed amendment to the contract to add a line item and price for removal of putrefied waste, pursuant to an express provision in the contract providing an amendment procedure. The County refused the amendment, asserting that contract included the disputed work. Ashbritt continued to work, under protest, and brought a claim for damages. Recognizing the disputed issue of fact regarding the scope of work, the trial court denied the County's motion for summary judgment based on sovereign immunity, pursuant to, *inter alia*, W&J.

Miorelli explains that "[b]inding the sovereign to the implied covenants of an express contract is quite different from requiring a sovereign to pay for work not contemplated by that contract." 703 So. 2d at 1051.[2] The parties dispute whether the work performed constituted work "totally outside the terms of the contract," extra work done at the County's behest in furtherance

---

[2] The trial court essentially applied this principle from Miorelli to the facts of the case, as did the district court in Posen Construction, Inc. v. Lee County, 921 F. Supp. 2d 1350, 1356 (M.D. Fla. 2013) (relying on Miorelli, 703 So. 2d at 1051) ("A claim for damages predicated on work 'totally outside the terms of the contract' is barred by the doctrine of sovereign immunity, whereas damages caused by extra work done at the state's behest and in furtherance of the contractual covenants (express or implied) are potentially recoverable.").

5

of express or implied contractual covenants, or work done as part of the express contract terms. Ashbritt presented evidence at summary judgment that the contract language included an amendment procedure, that the County required the additional work, that this additional work should have been added on as an amendment per industry custom, and that the failure to amend after requiring the additional work constituted a breach of the contract's express and implied duties and covenants. The County argues that the work was included in the contract terms or constituted gratuitous work outside the scope of the contract. Accordingly, the trial court correctly identified issues of fact regarding the application of summary judgment based on a claim of sovereign immunity and denied the County's motion.

Affirmed.