# SIXTH DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

Case No. 6D2023-4090
Lower Tribunal No. 2022-CA-004973-O

_____

FLORIDA VIRTUAL SCHOOL,

Appellant,

v.

COURTNEY CALFEE,

Appellee.

_____

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for Orange County.
Margaret H. Schreiber, Judge.

November 26, 2025

BROWNLEE, J.

Florida Virtual School ("FVS") appeals the trial court's nonfinal order denying its motion to dismiss the amended complaint filed by its former employee, Courtney Calfee. FVS argues sovereign immunity barred all three counts of Calfee's complaint. We reach the merits of FVS's third argument only and agree the school is entitled to relief on that issue. As to the other two issues raised, we affirm on procedural grounds. Our affirmance on these issues, therefore, is without prejudice to FVS pursuing its sovereign immunity defense below.

## Background

We begin by noting that, because this case turns on the parties' exact arguments and the specific reasons for the trial court's ruling, we deem it appropriate to include an explanation of the facts and procedural history, which may otherwise seem unnecessarily detailed. The following factual allegations were taken from Calfee's amended complaint, which we must accept as true.[1]

Calfee was an FVS employee from 2006 to 2021. During her employment, the school became embroiled in litigation against a competitor, which eventually led to the issuance of subpoenas for personal cell phone records and other data from FVS employees, including Calfee. During this time, FVS sought to image the contents of their employees' personal cell phones. Calfee expressed concern about the imaging to her supervisor, who informed her that she and her team could "simply refuse" to provide their phones and they would not be terminated as a result. On the day of the imaging, all fourteen employees on her team, including Calfee, refused to turn over their phones. Calfee continuously refused to turn over her phone throughout August 2021, and FVS terminated her on September 1, 2021, citing insubordination.

---

[1] *See Rojas v. Univ. of Fla. Bd. of Trs.*, 419 So. 3d 593, 604 (Fla. 2025) ("[G]iven the procedural posture of the case, 'we must accept as true' the factual allegations of Rojas's complaint and from those allegations 'we must draw all reasonable inferences in favor of' Rojas." (quoting *W.R. Townsend Contracting, Inc. v. Jensen Civ. Constr., Inc.*, 728 So. 2d 297, 300 (Fla. 1st DCA 1999)).

Calfee then sued FVS for breach of contract, breach of implied covenant of good faith and fair dealing, and promissory estoppel. Calfee attached her most recent employment contract to her amended complaint. The contract contained the following pertinent provisions:

4. **<u>Rule[s] and Regulations.</u>** The Employee shall be bound to comply with all applicable Florida laws and [FVS] policies, rules, regulations, and directives.

5. **<u>Employment at Will.</u>** The Employee may be dismissed at any time for any lawful reason.

In her breach of contract claim, Calfee alleged that under her employment contract FVS could not terminate her for an unlawful reason. She pled that she has a right to privacy "enshrined in the Florida Constitution," in article I, section 23, and that she was terminated for "purported[] . . . insubordination" for refusing to turn over her personal phone for imaging without privacy assurances. Aside from the terms of her written contract, Calfee also relied on her supervisor's oral promise that she would not be fired for refusing to turn over her phone.

In her second claim, Calfee asserted that the implied covenant of good faith and fair dealing required FVS "to act in good faith and to deal with Calfee fairly in deciding whether to terminate her employment." She alleged, in part, that FVS's actions in failing to offer privacy safeguards, and firing her despite its promises, frustrated the purpose of the employment contract and "contravened [her] reasonable contractual expectations." Lastly, in her promissory estoppel claim, Calfee alleged she relied to her

3

detriment on FVS's promise that she would not be terminated for refusing to allow imaging of her phone.

FVS moved to dismiss based on sovereign immunity. At the hearing on its motion, FVS argued Calfee's breach of contract claim was based on an oral promise—not on her employment contract—and that, in any event, as an at-will employee, Calfee could be terminated for any lawful reason, and she failed to cite a law that FVS violated by firing her. FVS further argued that, because Calfee's breach of contract claim failed, her breach of implied covenant claim necessarily failed as well. Finally, FVS argued Calfee's claims for breach of contract and promissory estoppel were mutually exclusive, that it did not waive sovereign immunity for purposes of promissory estoppel, and that Calfee could not circumvent the express terms of the contract by asserting a promissory estoppel claim.

Calfee countered that FVS waived its immunity when it entered an express written contract with her. She also argued FVS was wrong in claiming she had not identified an unlawful reason for her termination and pointed to the right of privacy asserted in her amended complaint:

> [W]e have alleged in the complaint, contrary to [FVS's] argument here today, that Ms. Calfee was terminated in violation of Article 1, Section 23 of the Florida Constitution for standing up for her right to privacy. Those allegations are contained in the general allegations in our complaint and are incorporated into this particular count.

4

FVS disagreed. While it acknowledged Calfee mentioned privacy in the amended complaint, it argued "this [was] not a claim arising under the Florida Constitution for any invasion of privacy. This is a breach of contract claim." FVS then reiterated its argument that Calfee's breach of contract claim failed because she relied exclusively on an oral promise to support that count. But the trial court disagreed with how FVS framed the claim:

> [Calfee] is arguing and has alleged that the amended complaint sets forth a cause of action for breach of contract in that the breach of contract cause of action arose when the plaintiff was fi[r]ed for a reason that essentially was not lawful. And that unlawful reason was the refusal to allow her phone to be searched, which would've been a violation of her right to privacy. I think that's [Calfee's counsel's] argument. So the unlawful reason is you can't fire somebody for not turning over their phone for inspection. And evidence of that unlawful reason is the communication. Under that analysis, wouldn't this truly be a breach of contract action to which sovereign immunity would not apply?

In responding, FVS would not concede the point. FVS maintained it was still unclear what the alleged unlawful reason for the firing was and returned its focus to the statements of Calfee's supervisor. FVS urged the court that the supervisor's alleged statement was outside the terms of the contract, that the contract required Calfee to comply with school directives, and that one of those directives was to turn over her cell phone.

The trial court then asked Calfee to identify the unlawful purpose alleged in the amended complaint. Calfee responded that it was "[t]wofold"—the violation of article

5

1, section 23 of the Florida Constitution, based on FVS demanding Calfee's personal cell phone without any privacy guarantees, and second, "grafted on that," Calfee's own supervisor told her she would not be terminated for her refusal to turn over her phone. The trial court then denied FVS's motion to dismiss but expressly permitted the school to raise sovereign immunity as an affirmative defense. FVS now appeals that ruling.[2]

## **Analysis**

We review issues of sovereign immunity de novo. *See Rojas*, 419 So. 3d at 604. at S195 (citing *Plancher v. UCF Athletics Ass'n*, 175 So. 3d 724, 725 n.3 (Fla. 2015)). "The doctrine of sovereign immunity . . . provides that a sovereign cannot be sued without its own permission [and] has been a fundamental tenet of Anglo–American jurisprudence for centuries[.]" *Am. Home Assur. Co. v. Nat'l R.R. Passenger Corp.*, 908 So. 2d 459, 471 (Fla. 2005). Based on the principle that "the King can do no wrong," "[t]he doctrine was a part of the English common law when the State of Florida was founded," and the Legislature has adopted and codified it. *Id.* (citing § 2.01, Fla. Stat. (2004)).

"In Florida, sovereign immunity is the rule, rather than the exception," *Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So. 2d 4, 5 (Fla. 1984) (citing Art. X, § 13, Fla.

---

[2] Because the trial court's order denied a motion that asserted entitlement to sovereign immunity, we have jurisdiction. *See* Art. V, § 4(b)(1), Fla. Const.; Fla. R. App. P. 9.030(b)(1)(B), 9.130(a)(3)(F)(iii); *Sch. Bd. of Polk Cnty. v. Keys Claims Consultants, LLC*, 50 Fla. L. Weekly D903, D903 (Fla. 6th DCA Apr. 17, 2025).

Const.), and it "derives entirely from the separation of powers," *Fla. Highway Patrol v. Jackson*, 288 So. 3d 1179, 1185 (Fla. 2020) (quoting *Wallace v. Dean*, 3 So. 3d 1035, 1045 (Fla. 2009)). Because of the separation of powers principles that animate the doctrine, and because it provides both immunity from suit and immunity from liability, the Florida Supreme Court instructs that "entitlement to sovereign immunity should be established as early in the litigation as possible." *Jackson*, 288 So. 3d at 1185.

Our state constitution, however, also provides that the Legislature can abrogate the state's sovereign immunity. *Am. Home Assur. Co.*, 908 So. 2d at 471 (citing Art. X, § 13, Fla. Const. ("Provision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating.")). And the Legislature has done so for certain tort claims. *See* § 768.28, Fla. Stat. (2022). Florida also recognizes the judicially created "implied waiver" of sovereign immunity "where the state has entered into a contract fairly authorized by the powers granted by general law." *Pan-Am*, 471 So. 2d at 5 (citing Art. X, § 13, Fla. Const.). This implied waiver doctrine applies only to express, written contracts. *Id.* at 6.

FVS, which was "established for the development and delivery of online and distance learning education," is governed by its board of trustees—a "public agency entitled to sovereign immunity pursuant to [section] 768.28[.]" § 1002.37(1)(a), (2), Fla. Stat. (2022). Moreover, through its board of trustees, FVS has statutory authority

7

to enter into employment contracts, as it did with Calfee. § 1002.37(2)(f)4., (2)(*l*), Fla. Stat. (2022).

On appeal, FVS relies on sovereign immunity to argue the trial court erred in denying its motion to dismiss Calfee's amended complaint. It first attacks the trial court's refusal to dismiss the breach of contract claim and argues Calfee was an at-will employee who could be terminated for any lawful reason. And—consistent with its argument below—FVS describes the breach of contract claim as being based exclusively on the allegation that Calfee was terminated unlawfully after her supervisor stated she would not be. FVS argues this allegation cannot provide the basis for a breach of contract claim because Calfee's termination could only be unlawful "if it violates a federal or state statute." But regardless of whether FVS is correct about that, the problem for the school is that it does not address Calfee's separate claim that FVS unlawfully terminated her for refusing to allow the imaging of her phone without privacy assurances.

As the appellant, FVS has the burden to demonstrate error on appeal. *See Applegate v. Barnett Bank of Tallahassee*, 377 So. 2d 1150, 1152 (Fla. 1979) ("In appellate proceedings the decision of a trial court has the presumption of correctness and the burden is on the appellant to demonstrate error."). FVS cannot satisfy this burden where it fails to address an independent ground for Calfee's breach of contract claim on which the trial court relied in denying the motion to dismiss. *See Davis v. State*,

8

153 So. 3d 399, 401 (Fla. 1st DCA 2014) ("An appellant who presents no argument as to why a trial court's ruling is incorrect on an issue has abandoned the issue—essentially conceded that denial was correct."). At the hearing on FVS's motion to dismiss, the trial court acknowledged Calfee's claim regarding her privacy interests, asked FVS and Calfee separately to address the claim—and even asked Calfee to identify where she pled this claim in the amended complaint—and stated clearly that her supervisor's statements were only one reason Calfee pled her termination was unlawful. The trial court then denied the motion.

Having abandoned any argument in response to Calfee's claim that FVS breached the employment agreement by terminating her, in violation of article 1, section 23 of the Florida Constitution, FVS has not demonstrated the trial court erred in failing to dismiss the breach of contract claim. Accordingly, we must affirm the trial court's denial of the motion to dismiss the breach of contract claim, without reaching its merits.

In finding FVS failed to challenge the trial court's rationale, we recognize its initial brief states that "Florida provides no cause of action for the common law tort of wrongful termination 'even where termination is founded on an employee's exercise of constitutional rights.'"[3] But FVS makes that isolated statement only when addressing

---

[3] FVS also did not preserve this issue for our review. *See Bryant v. State*, 901 So. 2d 810, 822 (Fla. 2005) ("In order to preserve an issue for appeal, the issue 'must be presented to the lower court and the specific legal argument or grounds to be argued on appeal must be part of that presentation.'" (quoting *Archer v. State*, 613 So. 2d 446, 448

9

Calfee's claim about her supervisor's alleged oral promise. It never ties that statement to Calfee's claim about the exercise of her right to privacy under the Florida Constitution, nor does FVS's brief include anything else that could reasonably be considered an argument related to that claim. FVS simply does not address it at all. And we cannot make the argument for FVS. *See City of Miami v. Steckloff*, 111 So. 2d 446, 447 (Fla. 1959) ("It is an established rule that points covered by a decree of the trial court will not be considered by an appellate court unless they are properly raised and discussed in the briefs."); *United States v. Burke*, 504 U.S. 229, 246 (1992) (Scalia, J., concurring) (citation omitted) ("The rule that points not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system of justice from the inquisitorial one."); *see also Williams v. State*, 50 Fla. L. Weekly D1636, D1638 (Fla. 5th DCA July 25, 2025) ("The passive design of the judicial power, as reflected in our constitution, requires a steadfast application of the [party presentation] principle.").

FVS's next argument fails for the same reason. In arguing the trial court erred in failing to dismiss Calfee's breach of implied covenant of good faith and fair dealing claim, FVS states: "Count Two, just like Count One, ultimately relies upon an alleged oral promise." But again, Calfee only relied on her supervisor's alleged oral promise in

---

(Fla. 1993))). FVS never made this argument to the trial court. Instead, FVS consistently focused its argument on Calfee's allegations about her supervisor's statements.

part, and FVS does not address Calfee's remaining claim—relied upon by the trial court—that she was unlawfully terminated for exercising her constitutional right to privacy. Because FVS has once again waived any challenge to that claim, it is not entitled to relief on its second issue either. Like the breach of contract claim, we take no position on the merits of this issue.

FVS's third argument, however, does not suffer from the same procedural defect. Calfee admitted that her promissory estoppel claim was based only on the allegation that her supervisor told her that she and her co-workers would not be terminated for refusing to turn over their cell phones and that she was ultimately terminated for refusing to do just that. FVS relies on *County of Brevard v. Miorelli Engineering, Inc.*, 703 So. 2d 1049 (Fla. 1997), and argues that sovereign immunity barred this claim because Calfee's supervisor's statements contradict the express terms of her written contract with FVS.[4]

In *Miorelli*, the Florida Supreme Court addressed the applicability of waiver and estoppel in sovereign immunity cases and found those doctrines cannot be used to defeat the express terms of a contract. 703 So. 2d at 1051. The court explained:

> Otherwise, the requirement of *Pan[-]Am* that there first be an express written contract before there can be a waiver of sovereign immunity would be an empty one. An unscrupulous or careless government employee could alter or waive the terms of the written agreement, thereby leaving the sovereign with potentially unlimited liability.

---

[4] Because we agree with FVS on this point, we need not also address whether sovereign immunity otherwise barred Calfee's promissory estoppel claim.

*Id.* The Florida Supreme Court recently reaffirmed *Miorelli*'s holding and clarified:

> [T]he preclusion of implied obligations in conflict with express contractual provisions extends to obligations that would arise from application of the doctrines of waiver and estoppel. In sum, *Miorelli* recognizes a line between impermissible implied obligations that contradict, supplant, or override express contractual provisions and permissible implied obligations that do not have such a directly antagonistic relationship with the text of a contract.

*Rojas*, 419 So. 3d at 604.

Calfee's promissory estoppel claim is directly antagonistic to the text of her employment contract. That contract provides both that Calfee "shall be bound to comply with all applicable Florida laws and [FVS] policies, rules, regulations, and directives" and that Calfee "may be dismissed at any time for any lawful reason." Despite those terms, Calfee pled in her promissory estoppel claim that she could not be terminated for failing to follow FVS's directive to turn over her phone because her supervisor told her that she would not be. Those allegations directly contradict the term of the contract providing that Calfee is bound to comply with all FVS directives. In fact, if Calfee's promissory estoppel claim were to survive based on these allegations alone, then, just as *Miorelli* cautioned, an FVS employee would have altered or waived the express terms of the employment contract, "thereby leaving the sovereign with potentially unlimited liability." 703 So. 2d at 1051.

Because Calfee's promissory estoppel claim conflicts with the express terms of her employment contract, the trial court erred in failing to dismiss that claim based on

12

FVS's sovereign immunity defense. Accordingly, we reverse the order denying the motion to dismiss, in part, and remand for further proceedings consistent with this opinion.

AFFIRMED in part; REVERSED in part; and REMANDED.

TRAVER, C.J. and MIZE, J., concur.

Margaret E. Kozan and M. Catherine Losey, of Losey, PLLC, and David J. D'Agata and Luis R. Guzman, of FLVS Office of General Counsel, Orlando, for Appellant.

Carlos F. Gonzalez, of Carlos F. Gonzalez, P.A., South Miami, for Appellee.

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND DISPOSITION THEREOF IF TIMELY FILED