**FINANCIAL HEALTHCARE ASSOCIATES, INC.,**
Plaintiff,

v.

**PUBLIC HEALTH TRUST OF MIAMI–DADE COUNTY,**
et al., Defendants.

No. 06 21692 CIV, 06 21692 CV.

United States District Court,
S.D. Florida.

May 18, 2007.

Clare S. Long, Steven B. Beranek, Corsaro & Associates, Westlake, OH, Peter Ross Siegel, Greenspoon Marder, P.A., Fort Lauderdale, FL, for Plaintiff.

Jason Edward Bloch, Steven Barry Bass, Miami, FL, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SEITZ, District Judge.

THIS MATTER comes before the Court upon the Motion for Summary Judgment [DE–42] of Defendants Public Health Trust of Miami–Dade County ("Trust") and Frank J. Barrett ("Barrett") (collectively "Defendants"). This case stems from a written contract for services between the Trust and Plaintiff Financial Healthcare Associates, Inc. ("FHA"). The contract provided for the Trust to pay FHA a 3.25% commission on all patient accounts that FHA successfully enrolled in Medicaid. FHA contends that it only agreed to the 3.25% commission rate based on representations from the Trust that FHA would provide a high volume of patient accounts. FHA also claims that the Trust, through Barrett, later orally promised to increase the commission rate to 6.25% but never did. FHA filed a five-count Complaint against Defendants founded on breach of contract, quasi-contract and fraud theories. The narrow question presented in this motion is whether the two representations regarding volume of accounts and commission rate are enforceable, even though these terms are not included within the four corners of the parties' written agreement. The short answer is no.

### I. Factual Background

Plaintiff FHA is an Ohio corporation that works with hospitals to screen self-pay patients for potential Medicaid eligibility. Identifying and enrolling patients in Medicaid offsets costs for the hospital and generates income for FHA, which accepts a modest percentage of the Medicaid reim-

bursements as a fee. Defendant Trust is an agency and instrumentality of Miami–Dade County Florida, *see* Miami–Dade County Code § 25A–1, which is itself a political subdivision of the State of Florida.[1] The Trust operates the non-profit Jackson Memorial Hospital ("Jackson"). Defendant Barrett is Jackson's Chief Financial Officer and a citizen of Florida.[2]

In April of 2004, the Trust issued a "Request for Proposals for Medicaid Applications, RFP No.: 04–5156"("RFP"). *See* DE–1 (Composite Exhibit) at p. 60. The purpose of the RFP was to solicit vendors to identify and enroll patients for Medicaid. RFP § I.A at 2. The RFP states that it becomes part of any resulting agreement between the Trust and the vendor with the winning bid. RFP § IV.Q at 28. Several of the provision in the RFP are critical to resolution of this dispute. First, the term of the resulting agreement was three years, with subsequent options to renew. RFP § IV.C at 25. Second, the RFP contains an integration clause, expressly declaring that "[b]oth parties agree that the resulting agreement, together with the provisions of this RFP and Proposer's response to same, including attachments, exhibits, and properly executed amendments, shall contain the entire agreement of the parties therein. There are no conditions or limitations to this undertaking except those stated herein." RFP § IV.Q at 28. Third, the RFP provides that the parties' written agreement can be modified only by another written agreement executed by both parties. *Id.* ("After execution of the resulting agreement, no alteration, change or modification of same shall be binding or effective unless executed in writing and signed by both parties.").

In April of 2004, FHA submitted its proposal ("Proposal") to the Trust in response to the RFP. *See* DE–44, Ex. C. In the Proposal, FHA offered to perform the services described in the RFP in return for a commission fee of 3.75% of every patient account successfully converted to Medicaid. *Id.* at 27. Shortly thereafter, however, the parties negotiated a slightly lower commission rate of 3.25%, which was memorialized in the parties' written "Fee Agreement" on May 17,2004. *See* DE–42, Ex. 2. FHA claims that it only agreed to reduce its proposed commission rate based on representations from the Trust that the Trust could, and would, provide as many as 4,000 patients to FHA for screening. The Trust did provide FHA with a spread sheet containing a list of potential accounts during the negotiations. *See* DE–44, Ex. E. It is undisputed, however, that the Fee Agreement, together with the RFP and FHA's Proposal, constitute the only written contractual agreement (the "Contract") between the parties. *See* RFP § IV.Q at 28; DE–42, Ex 3 (Response to Request for Production) ¶ 1.

FHA provided services as envisioned by the parties' Contract for approximately six months. The Trust paid commissions on those services at the prescribed rate of 3.25%. On or about December of 2004, FHA then requested an increase in the commission to 6.75% based on its contention that it was not making as much money as it expected, due to fewer patients than the Trust had represented to FHA during negotiations. FHA claims that Defendant Barrett orally assented to the increased commission, effective January 1, 2005. While Defendants dispute this allegation, it is undisputed that no written amendment

---

**1.** Florida law specifically authorizes public health trusts, like the Trust, to sue and be sued. *See* § 154.11(1)(a), Fla. Stat.

**2.** Jurisdiction is founded upon diversity of citizenship with the amount in controversy exceeding $75,000, pursuant to 28 U.S.C. § 1332. *See* DE–1 at 15 (Complaint ¶¶ 1–6).

was ever executed modifying the 3.25% commission rate. Indeed, no written modification whatsoever was executed with respect to the Contract.

When Trust refused to pay an increased commission rate this action ensued.

## II. Legal Standard

Summary judgment under Fed.R.Civ.P. 56(c) is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial responsibility of showing the Court, by reference to the record, that there are no genuine issues of material fact to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden may be met by "showing" or "pointing out" to the Court that there are no genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir.1995) (*per curiam*) (quoting *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548). Once the initial burden is met, the non-moving party must go beyond the pleadings and "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)); *see also Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. In so doing, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. 1348. A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990).

When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences therefrom in the light most favorable to the non-moving party. *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir.1998) (citations omitted). The Court must then decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997) (quoting *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505).

With these principles in mind, the Court turns to Defendants' Motion.

## III. Analysis

The Trust moves for summary judgment on all claims against it (Counts I–III and V) and Barrett moves for summary judgment on the one claim against him (Count IV). The Trust argues that sovereign immunity bars suit on all of these claims. The Trust also contends that FHA cannot establish a *prima facie* case for breach of contract (Count I), fraud (Count III) or promissory estoppel (Count V). Barrett argues that FHA cannot establish fraud (Count IV). The broad sovereign immunity question is resolved first, followed by the individual claims against the Trust and Barrett.

### A. Defendant Trust's Arguments

#### 1. Sovereign Immunity

▮▮▮▮ As a threshold matter, the Trust argues that judgment in its favor must be granted on all counts, as a matter of law, because the County has not waived its sovereign immunity from suit. In Florida, sovereign immunity is the general rule, not

the exception. *See Pan–Am Tobacco v. Dept. of Corrections,* 471 So.2d 4, 5 (Fla. 1984). As pertains to this lawsuit, however, the Florida legislature has expressly waived the state's sovereign immunity for torts committed by government employees acting within the scope of their employment, but only provided that the tort was not committed with bad faith. *See* § 768.28(1), (9)(a), Fla. Stat.[3] Because bad faith is a necessary component of any fraud claim, the Trust argues that sovereign immunity bars FHA's suit for fraud against the Trust. Such is the law in Florida. *See Parker v. Florida Bd. of Regents,* 724 So.2d 163, 168 (Fla. 1st DCA 1998) (agreeing that "for fraud to exist, as a matter of law, bad faith must also exist[,]" thus placing fraud claims outside the waiver of sovereign immunity provided for in § 768.28); *see also id.* at 169 ("[an] action for fraudulent misrepresentation *per se* contains the elements of bad faith") (citing *First Interstate Dev. Corp. v. Ablanedo,* 511 So.2d 536, 539 (Fla.1987)). As FHA neither challenges this controlling law nor its application to the facts of this case, summary judgment is granted in Trust's favor on Count III.

■ Next, the Trust argues that FHA's remaining contract-related claims (Counts I, II and V) are also barred because the state's waiver of sovereign immunity from suits on contract claims is narrowly limited to actions on express written contracts. The Trust's argument follows from the Florida Supreme Court's decision in *Pan–Am Tobacco v. Dept. of Corrections,* 471 So.2d 4 (Fla.1984), and its progeny. In

*Pan–Am,* the court held that even though the legislature had not expressly waived the state's sovereign immunity from suits on contract claims, the legislature's grant of authority to enter into contracts implicitly waived the immunity bar.[4] The *Pan–Am* court held that "where the state has entered into a contract fairly authorized by the powers granted by general law, the defense of sovereign immunity will not protect the state from action arising from the state's breach of that contract." 471 So.2d at 5. In the next paragraph, however, the court qualified the newly-minted rule, "emphasiz[ing] that [its] holding here is applicable only to suits on express, written contracts into which the state agency has statutory authority to enter." *Id.* at 6. The Trust relies on this narrowing principle to seek judgment in its favor on FHA's claims for breach of contract, breach of implied contract and promissory estoppel.

■ Clearly, the implied contract alleged in Count II is not an express written contract and therefore it fails to escape the sovereign immunity bar as articulated in *Pan–Am.* FHA raises no serious argument to the contrary and so judgment in the Trust's favor on Count II is granted. Similarly, FHA's claim in Count V alleging promissory estoppel is not founded on an express written contract and, therefore, it falls within the limiting rule announced in *Pan–Am.* Although the Court could not find, and neither party cites, any authority on whether sovereign immunity bars promissory estoppel, the mutuality and fairness principles animating the *Pan–Am*

---

**3.** Section 768.28(1) declares that "the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act." However, later on the statute provides that "[t]he state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent … committed in bad faith or with malicious purpose or

in a manner exhibiting wanton and willful disregard of human rights, safety, or property." § 768.28(9)(a), Fla. Stat.

**4.** The decision is premised on the contractual doctrine of mutuality of remedy. Unless the parties' agreement is mutually enforceable it is illusory, not to mention unfair. *See Pan–Am,* 471 So.2d at 5.

decision support the view that such a claim is barred. By its very nature, promissory estoppel does not turn on mutual assent to be bound in the same way as a contract claim. Rather, the essence of promissory estoppel is detrimental reliance. *See W.R. Grace & Co. v. Geodata Services, Inc.,* 547 So.2d 919, 924 (Fla.1989); *see also generally* RESTATEMENT (SECOND) OF CONTRACTS § 90 (1979) (cited with approval in *Geodata* ). Where, as here, there is a written contract and the estoppel claim is founded on oral terms that contradict the parties' written agreement, the mutuality principle actually favors dismissal. In fact, given that the legislature has preserved the state's immunity for fraudulent misrepresentation claims, the courts should be hesitant to imply a waiver for promissory estoppel claims. Indeed, it would be particularly inappropriate to open the government fisc to claims based on allegations of oral promises when the parties expressly obligated to perform on different terms. Accordingly, judgment for the Trust on FHA's Count V is granted.

■ Lastly, the Trust argues that even as to Count I's breach of contract claim, sovereign immunity precludes suit because the breach in question rests on terms that are not part of the written contract and, in fact, are contradictory to the express terms therein. FHA alleges that the Trust breached the Contract by refusing to pay commissions at a rate of 6.75%, when the Contract only provides for payment at 3.25%. Likewise, FHA contends that the Trust breached its promise to provide a sufficient number of patients, as reflected in the Trust's patient spread sheet, but the Contract itself makes no mention of volume and does not incorporate the spreadsheet.

In support of this sovereign immunity argument, the Trust relies on *Southern Roadbuilders, Inc. v. Lee County,* 495 So.2d 189 (Fla. 2d DCA 1986), where the court affirmed dismissal of a breach of contract claim against a governmental entity predicated on the parties' written construction contract. The plaintiff sought to recover for additional work it performed based upon oral work change orders. Relying on *Pan–Am,* the trial court dismissed the action on sovereign immunity grounds, finding that the extra work was not within the four corners of the parties' agreement. The appellate court agreed, finding that the "appellant has not established in the instant action that a breach of the written and binding instrument occurred .... [because] the additional costs claimed by appellant were neither addressed in the original contract nor in any subsequent legally operative instrument." *Southern Roadbuilders,* 495 So.2d at 190.[5] The court attached "particular significance" to the fact that the contract provided express procedural instructions for change orders which plaintiff ignored. *Id.* The Trust contends that this case is on all fours with *Southern Roadbuilders.* It is true that in both cases the asserted breach relates to terms not found in the written agreement, and violates the agreement's written modification provisions.

In opposing the Trust's motion, FHA relies on *Champagne–Webber, Inc. v. City of Fort Lauderdale,* 519 So.2d 696 (Fla. 4th DCA 1988). In *Champagne–Webber,* the city contracted with a construction company to build a bridge. Prior to entering the contract, the city represented that the soil condition at the building site was sandy. When the soil turned out to be rocky instead, plaintiff naturally incurred greater costs and sued the city after it

**5.** Notably, the Florida Supreme Court endorsed the Second DCA's analysis in *County* *of Brevard v. Miorelli Engineering, Inc.,* 703 So.2d 1049, 1051 (Fla.1997).

refused to offset the extra costs. The trial court granted summary judgment, reading *Pan–Am* as blocking suit because the breach was based on false representations made outside express language of the contract. The appellate court disagreed, distinguishing between suits based on a breach of terms outside the contract and those based on breach of implied covenants and warranties within a written contract. Reasoning that the representation as to soil conditions was an implied warranty in the parties' contract, arising from their written agreement that the contractor perform all work "... expressly or impliedly required to be furnished and done by the contractor under the contract....," the court allowed plaintiff to proceed with its breach of contract suit. *Champagne–Webber,* 519 So.2d at 698.

FHA concedes, as it must, that the terms upon which it founds its claim for breach of contract, namely the 6.75% commission and the quantity of patient accounts, are not within the four corners of the contract. Nevertheless, FHA claims that such terms are implied warranties, and therefore part of the written contract. FHA's attempt to liken this case to *Champagne–Webber* is unavailing. As the name suggests, an implied warranty or implied covenant exists when the law derives terms by implication from the nature of the written contract language. For example, courts generally imply a covenant of good faith and fair dealing between two parties who mutually agree to a particular transaction. But it does not follow that an agreement to identify and enroll patients in Medicaid must in any way implicate a certain number of patients or a certain percentage commission. Indeed, a 6.75% commission rate simply cannot be inferred from the parties' Contract, where, by its express terms, the parties agreed to 3.25%. Similarly, the Court can infer nothing from the nature of the parties' agreement that dictates any particular volume of business. In short, the claims in this case are more like those in *Southern Roadbuilders* than *Champagne–Webber.* Accordingly, the Court grants the Trust's summary judgment motion on Count I.

### 2. Breach of Contract

█ Even if the Trust were not entitled to judgment on sovereign immunity grounds, it would still prevail on FHA's breach of contract claim for the simple reason that there was no breach. On the undisputed record the Trust complied with its obligations. FHA has no enforceable claim based on a higher 6.75% commission because the written Contract expressly provides for a commission of 3.25%. There is no dispute that the Trust fulfilled its obligation to pay out on the 3.25% commission rate. The oral representation from Barrett that the Trust would increase the commission to 6.25% did not effectively amended the Contract. The only way to do that was in writing, because the Contract expressly provides that "no alteration, change or modification of [the Contract] shall be binding or effective unless executed in writing and signed by both parties." Because Barrett's representation about the 6.75% commission was never reduced to writing and executed by both parties, it is not enforceable.

█ FHA has no viable breach of contract based on the volume of patients either. The integration clause in the Contract limits the agreement to the RFP, FHA's Proposal and the Fee Agreement. In fact, the parties agreed that any pre-execution representations, necessarily including the spreadsheet, were not part of the parties' Contract. *See* RFP, § IV. Q, p. 28; *see also Vorzimer v. Kaplan,* 362 So.2d 451, 453 (Fla. 3d DCA 1978) (explaining the general rule that "the terms of a valid, written contract cannot be varied by a verbal agreement where such an

agreement was made before or at the time of the instrument in question. Such agreements are considered as waived or merged into the written contract."). Therefore, the spread sheet and any representations related to it are not enforceable provisions of the Contract.

■ Furthermore, the unwritten agreement FHA asks the Court to enforce would run afoul of the Statute of Frauds. In Florida, the statute dictates that "[n]o action shall be brought ... upon any agreement that is not to be performed within the space of 1 year from the making thereof, ... unless the agreement or promise ... [is] in writing...." § 725.01, Fla. Stat. Here, the Contract was to be performed over the course of three years, making the statute of frauds applicable. Hence, the failure to reduce the volume term or the more favorable commission rate to writing renders these terms unenforceable. The purpose of the statute is to "intercept the frequency and success of actions based on nothing more than loose verbal statements or mere innuendos." *Tanenbaum v. Biscayne Osteopathic Hosp., Inc.*, 190 So.2d 777, 779 (Fla.1966) (quoting *Yates v. Ball*, 132 Fla. 132, 181 So. 341, 344 (1937)). Those same concerns resonate here.

■ FHA pleads that it "seeks only the benefit of its bargain with the Trust" ... and that it "seeks only the compensation it was entitled to under the express terms of the original contract, albeit calculated in a different fashion." Plf. Opp. at 10. By this, FHA seems to mean that enforcing the 6.75% commission will comport with the parties' intent, because it will afford FHA the total income it originally expected from the deal. This argument turns contract law on its head. The Court's function in interpreting and enforcing a contract is to determine the parties' intent from the express text of the Contract, not the other way around.

When, as here, the language of the Contract is clear and unambiguous, the Court cannot rely on any evidence extrinsic to the express terms contained therein. *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Insur. Co.*, 711 So.2d 1135, 1139 (Fla.1998). Here, FHA asks the Court to accept that its intent was to make a certain income that is unexpressed in the Contract, and then to mold the express terms to fit FHA's putative intent. This the Court cannot do. As stated before, there is no reference in the Contract to any guaranteed volume of business. Nor is there any reference to a 6.75% commission. What the Contract does say is that the Trust will pay FHA a commission of 3.25% for any case successfully converted to Medicaid. The Trust did just that.

### 3. Fraud

■ In addition to the bar of sovereign immunity, FHA's fraud claim fails because it would be unreasonable for FHA to have relied on any representations that were not included in the subsequent written contract. *See Eclipse Medical, Inc. v. American Hydro–Surgical Instruments, Inc.*, 262 F.Supp.2d 1334, 1345 (S.D.Fla. 1999), *aff'd*, 235 F.3d 1344 (11th Cir.2000) (table); *Barnes v. Burger King Corp.*, 932 F.Supp. 1420, 1428 (S.D.Fla.1996). It would also be unreasonable to rely on an oral modification, where the contract expressly calls for modifications to be written in order to be effective. Furthermore, allowing a breach of contract claim to proceed as a re-labeled fraud claim in this case would subvert the statute of frauds, especially where, as here, the contract contains an integration clause declaring that there are no other terms outside the four corners of the written contract. *See Eclipse Medical*, 262 F.Supp.2d at 1345 ("Florida law explicitly prohibits a plaintiff from reformulating an oral contract as a

misrepresentation for purposes of avoiding the Statute of Frauds.").

FHA essentially concedes its fraud claim by failing to address the Trust's arguments in its opposition papers. Accordingly, there is no reason to deny the Trust's motion for summary judgment on these additional grounds.

### 4. Promissory Estoppel

 Finally, in addition to sovereign immunity grounds, the Trust is entitled to summary judgment on FHA's promissory estoppel claim because, as a matter of law, any reliance on oral promises that contradict the terms of the parties' written agreement is unreasonable. *See Harris v. School Bd. of Duval County*, 921 So.2d 725, 735 (Fla. 1st DCA 2006) ("Reliance on any promise to make payments not called for by the comprehensive, integrated written contracts ... would not ... be reasonable as a matter of law"); *see also Dept. of Health & Rehabilitative Servs. v. Law Offices of Donald W. Belveal*, 663 So.2d 650, 651 (Fla. 2d DCA 1995) (plaintiff's detrimental reliance on the unwritten word of an HRS employee as to future extensions of the parties' contract was deemed unreasonable where the written contract, with an integration clause, only provided for a one year term). In addition, FHA's promissory estoppel claim violates the Statute of Frauds. *See Harris*, 921 So.2d at 735 n. 9 ("The doctrine of promissory estoppel cannot be used to circumvent the statute of frauds.") (citing *Tanenbaum*, 190 So.2d at 778–79).

### B. Defendant Barrett's Argument

### 1. Officer Fraud

As to FHA's fraud claim against Defendant Barrett, any reliance FHA placed on his alleged oral representations concerning a modification of the commission rate is unreasonable because the Contract plainly states in express terms that to be binding,

any modification must be made in writing and signed by the parties. *See Harris*, 921 So.2d at 735. Accordingly, summary judgment in Barrett's favor is granted on Count IV.

### IV. Conclusion

For the reasons set forth above, it is hereby

ORDERED that Defendants' Motion for Summary Judgment [DE–42] is GRANTED; and

IT IS FURTHER ORDERED that any motions not otherwise ruled upon are DENIED AS MOOT and this case is CLOSED.