DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**AMANDA HEINE** and **JHAYLA STREADY,**
individually and on behalf of all others similarly situated,
Appellants,

v.

**FLORIDA ATLANTIC UNIVERSITY BOARD OF TRUSTEES,**
Appellee.

No. 4D22-15

[April 26, 2023]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Samantha Schosberg Feuer, Judge; L.T. Case No. 502021CA004008.

Adam A. Schwartzbaum, Adam M. Moskowitz, Howard M. Bushman, and Barbara C. Lewis of The Moskowitz Law Firm, Coral Gables, and Douglas F. Eaton of Eaton & Wolk, P.L., Miami, for appellants.

Holly Griffin Goodman and Jack J. Aiello of Gunster, Yoakley & Stewart, P.A., West Palm Beach, for appellee.

KLINGENSMITH, C.J.

Appellants Amanda Heine and Jhayla Stready ("Students") appeal the trial court's order granting Florida Atlantic University Board of Trustees' ("FAU") motion to dismiss their class action suit with prejudice. Students claim FAU breached a contract when the university failed to provide certain in-person services during the COVID-19 pandemic yet continued to collect fees and refused to provide refunds. For the reasons set forth below, we affirm. Because of the nature of the dispute and the similar cases filed in other jurisdictions, we also certify a question of great public importance.

Background

After the COVID-19 virus began infecting people nationwide, Florida's Governor issued Executive Order 20-52 on March 9, 2020, declaring a Florida State of Emergency due to COVID-19. Two days later, the Florida

Board of Governors issued an order to all state public universities, including FAU, directing them to immediately begin transitioning their faculty and students to remote instruction. Many colleges and universities throughout the country acted similarly to stop the spread of COVID-19 by moving classes online and halting various in-person activities and services. Initially, this response earned these institutions praise for acting in the best interests of their students and public health.[1] However, those directly and adversely affected by the shutdowns later closely scrutinized those decisions. As a result, college students across the country filed lawsuits seeking refunds of either tuition or fees for the in-person educational experience which they expected, but did not receive.

In exercising its constitutional authority to establish tuition and fees for students at these institutions,[2] the Florida Legislature has enacted several statutes requiring all state public universities to charge fees to students who register for courses. *See* § 1009.24(2), Fla. Stat. (2021) ("All students shall be charged fees . . . ."); § 1009.24(4)(d), Fla. Stat. (2021) ("The sum of the activity and service, health, and athletic fees a student is required to pay to register for a course . . . ."). The Legislature has prescribed the fees which each state public university must charge to all students, except those exempted by law. § 1009.24, Fla. Stat. (2021); § 1001.706(4)(c), Fla. Stat. (2021) ("The Board of Governors, or the board's designee, shall establish tuition and fees pursuant to ss. 1009.24 and 1009.26, unless otherwise provided in law."). In addition to mandating state universities collect and retain certain fees, the Legislature has specified general purposes for their use. *See, e.g.*, § 1009.24(9), Fla. Stat. (2021) (authorizing "separate activity and service, health, and athletics fees").

In June 2021, Students filed this suit against FAU after the COVID-19 shutdown, alleging one count of breach of contract and, in the alternative, one count of unjust enrichment. Students assert that an express, written contract was established with FAU when they signed up for classes and paid tuition and fees. In support of their position, Students attached to their complaint the billing statements which they had received after paying

---

[1] "The Legislature finds that during the COVID-19 public health emergency, educational institutions had little choice but to close or restrict access to their campuses in an effort to protect the health of their students, educators, staff, and communities. Despite these efforts, more than 120,000 cases of COVID-19 have been linked to colleges and universities nationwide, and the deaths of more than 100 college students have been attributed to the disease." § 768.39(1), Fla. Stat. (2021).

[2] *See* Art. II, § 19, Fla. Const.

their tuition for the affected semesters.  In the billing statements for the Spring 2020 semester, Students were charged for several services in addition to tuition, including fees for transportation access, health, and athletics.  Students also attached a "Statement of Responsibility" to their complaint that they were required to sign when registering for classes.  In the section of the Statement titled "Payment of Fees & Refunds," Students agreed to the following terms:

> I understand that **when I register** for any course at Florida Atlantic University or request and/or receive any service from Florida Atlantic University **I accept full responsibility to pay all tuition, fees and other associated costs *assessed as a result of my registration and/or request/receipt of services.*** I further understand and agree that **my registration and acceptance of these terms** constitutes a promissory note agreement (i.e., a financial obligation in the form of an educational loan as defined by the U.S. Bankruptcy Code at 11 U.S.C. § 523(a)(8)) in which Florida Atlantic University is providing me educational services, deferring some or all of my payment obligation for those services.  I promise to pay for all assessed tuition, fees and other associated costs by the published or assigned due date.  I understand that distance learning courses may have additional cost associated with taking online proctored exams. Those costs could include: webcam (if your computer does not already have one), online proctoring fees, and/or remote testing center costs.

(emphasis added).

FAU moved to dismiss the complaint, arguing Students' claims were barred by the separation of powers doctrine as well as by sovereign immunity.  Following a hearing on the motion, the trial court dismissed Students' complaint with prejudice, finding their claims were barred under both doctrines.  On FAU's sovereign immunity defense, the trial court found the Statement of Responsibility and tuition billing statements did not constitute an express, written contract because they simply referenced "fees" in the aggregate without identifying any specific services provided in exchange for Students' payment.  According to the lower court's ruling, "[a]t best, the Statement of Responsibility is an agreement by FAU to allow Plaintiffs to register for courses (without regard to whether classes would be offered online or in-person).  No specific or ancillary services are promised in the Statement of Responsibility."  Because the attachments to the operative complaint did not clearly and unequivocally show the

existence of an express contract, the trial court found Students did not establish a cause of action with allegations sufficient to be deemed a waiver of sovereign immunity to allow recovery under either a breach of contract or unjust enrichment claim. This appeal followed.

Standard of Review

An appellate court reviews a motion to dismiss using a de novo review. *See Bell v. Indian River Mem'l Hosp.*, 778 So. 2d 1030, 1032 (Fla. 4th DCA 2001); *see also Plancher v. UCF Athletics Ass'n, Inc.,* 175 So. 3d 724, 725 n.3 (Fla. 2015) (an appellate court reviews issues of sovereign immunity de novo). "When considering a motion to dismiss, trial courts are not permitted to 'go beyond the four corners of the complaint in considering the legal sufficiency of the allegations.'" *PNC Bank, Nat'l Ass'n v. Inlet Vill. Condo. Ass'n, Inc.*, 204 So. 3d 97, 99 (Fla. 4th DCA 2016) (quoting *Barbado v. Green & Murphy, P.A.,* 758 So. 2d 1173, 1174 (Fla. 4th DCA 2000)). However, "[t]he issue of sovereign immunity may properly be considered on a motion to dismiss." *Dist. Bd. of Trs. of Miami Dade Coll. v. Verdini*, 339 So. 3d 413, 417 (Fla. 3d DCA 2022) (citing *Charity v. Bd. of Regents of the Div. of Univs. of the Fla. Dep't of Educ.*, 698 So. 2d 907, 907 (Fla. 1st DCA 1997)).

Florida Cases

Three opinions from other Florida appellate courts are relevant to the analysis of the legal viability of Students' claims: *Verdini*, 339 So. 3d at 413; *University of South Florida Board of Trustees v. Moore*, 347 So. 3d 545 (Fla. 2d DCA 2022), *reh'g denied*, SC22-1398, 2023 WL 105592 (Fla. Jan. 5, 2023); and *University of Florida Board of Trustees v. Rojas*, 351 So. 3d 1167 (Fla. 1st DCA 2022), *appeal filed*, SC23-126. We will discuss each of these in turn.

1. *District Board of Trustees of Miami Dade College v. Verdini*

In *Verdini*, the trial court denied the state college's motion to dismiss by ruling the attachments to the complaint sufficiently contained express written terms and provided "the specific services [the college] was contractually obligated to provide in exchange for [the student's] payment of 'fees' to survive a motion to dismiss." *Verdini*, 339 So. 3d at 417. The Third District reversed that order, finding the plaintiff's complaint did not establish an express contract for "on-campus or in-person services in exchange for the various fees listed in the complaint." *Id.* at 421.

4

The Third District noted the plaintiff's breach of contract claim was not based on the college's complete failure to provide services; it was instead premised on "an alleged failure to provide *on-campus* or *in-person* services." *Id.* at 418. The appellate court found nothing in the complaint expressly required the college to provide on-campus services in exchange for paying the student services, financial aid, capital improvement, and technology fees. *Id.* Further, the appellate court held the plaintiff had failed to identify anything that expressly prohibited the school from "providing remote services in exchange for these fees." *Id.* For that reason, the appellate court held the general allegations made in the complaint were "insufficient to overcome sovereign immunity as there is nothing evidencing an express, written contract." *Id.* at 419.

### 2. *University of South Florida Board of Trustees v. Moore*

In *Moore*, the plaintiffs attached a copy of the university's registration statement to their complaint to support the allegation that an express contract existed. *Moore*, 347 So. 3d at 549. That statement provided in part: "By clicking 'Submit Changes' below, *I am entering a legal, binding contract with [university]* and I hereby acknowledge that I have read and understand the terms and conditions of this registration agreement." *Id.* The trial court denied the university's motion to dismiss "on the merits of its sovereign immunity defense," and the Second District affirmed, finding "the clear language of the registration agreement" created a "legal, binding contract" between Moore and the university. *Id.* at 547, 549.

In making its decision, the district court noted the university had not included any of its policies in the record to support the contention that it made "no promises to Moore regarding any specific services in return for her payment of student fees." *Id.* at 550. However, the Second District held "a determination regarding whether the parties' 'legal, binding contract' included a promise to provide on-campus services in exchange for fees is more appropriate at the summary judgment stage." *Id.* at 549.

### 3. *University of Florida Board of Trustees v. Rojas*

In *Rojas*, the plaintiffs brought claims of unjust enrichment and breach of contract based on the university's "failure to offer on-campus services or refund the related fees for those impacted semesters" during the pandemic. *Rojas*, 351 So. 3d at 1169. Attachments to the complaint included: "a copy of the [school's] financial liability agreement," "an estimate of tuition and fees . . . along with Rojas's tuition statement," and citations to "various University webpages" with descriptions of in-person and on-campus amenities. *Id.* at 1169, 1171. On the university's motion,

the trial court dismissed the unjust enrichment claim but denied the motion as to the plaintiffs' breach of contract claim. *Id.* at 1170.

On appeal, the First District reversed the lower court's denial of the motion to dismiss the breach of contract claim, finding "the assorted documents attached to the complaint [did not] constitute an express written contract sufficient to overcome sovereign immunity." *Id.* at 1170. The district court found the attachments to the complaint did not "obligate the University to a refund of fees when any such services are paused, limited, or outright cancelled," and failed to establish "an express written contract expressly addressing the University's obligation to provide such on-campus services." *Id.* at 1171–72. The appeals court described these attachments as a "hodge-podge of documents that fail[ed] to clear this basic hurdle." *Id.* at 1171. Nonetheless, the First District certified a question of great public importance to the Florida Supreme Court on the issue of whether a plaintiff could proceed on their breach of contract claim to recover subject fees from a state university. *Id.* at 1169.

Analysis

Unless the immunity is waived, governmental entities in Florida are generally sovereignly immune from suit. *See City of Key West v. Fla. Keys Cmty. Coll.*, 81 So. 3d 494, 497 (Fla. 3d DCA 2012); *Pan-Am Tobacco Corp. v. Dept. of Corrs.*, 471 So. 2d 4, 5 (Fla. 1984) (noting sovereign immunity "is the rule, rather than the exception" in Florida). Florida courts determine whether a state entity "has waived sovereign immunity depending on whether the claim against [it] sounds in tort or contract." *City of Miami Firefighters' & Police Officers' Ret. Tr. & Plan v. Castro*, 279 So. 3d 803, 806 (Fla. 3d DCA 2019). "[W]here the state has entered into a contract fairly authorized by the powers granted by general law, the defense of sovereign immunity will not protect the state from action arising from the state's breach of that contract." *Pan-Am*, 471 So. 2d at 5. However, waiver is "applicable only to suits on express, written contracts into which the state agency has statutory authority to enter." *Id.* at 6. That immunity cannot be waived by "inference or implication." *Am. Home Assurance Co. v. Nat. R.R. Passenger Corp.*, 908 So. 2d 459, 472 (Fla. 2005) (citing *Spangler v. Fla. State Tpk. Auth.*, 106 So. 2d 421, 424 (Fla. 1958)); *see also City of Fort Lauderdale v. Israel*, 178 So. 3d 444 (Fla. 4th DCA 2015).

1. Breach of contract

To decide whether sovereign immunity bars Students' breach of contract claim, we must answer the fundamental question of whether the

6

Legislature has waived immunity or whether an express, written contract exists between FAU and Students. If either can be answered in the affirmative, FAU cannot invoke sovereign immunity to bar Students' breach of contract action. *See Pan-Am*, 471 So. 2d at 5. However, if the complaint establishes at best the existence of only an implied contract between the parties, then sovereign immunity bars Students' breach of contract action and their unjust enrichment claim. *See Israel*, 178 So. 3d at 447–48.

Students' breach of contract claim is founded on the allegation that FAU breached an express obligation to provide certain on-campus and in-person services when FAU transitioned to remote classes during the pandemic. Specifically, Students argue the Statement of Responsibility and tuition invoices attached to their amended complaint "provide for, *inter alia*, the provision of and payment for on-campus services and facilities." Looking at the plain language of section 1009.24, the Legislature clearly did not authorize a private cause of action premised on the improper collection of fees, and, therefore, has not expressly waived sovereign immunity by statute. *See, e.g., Murthy v. N. Sinha Corp.*, 644 So. 2d 983, 986 (Fla. 1994) ("There is no evidence in the language of the statute or the statutory structure that a private cause of action . . . was contemplated by the legislature in enacting this statute."). Because nothing contained in section 1009.24 expressly obligates FAU to provide any specific on-campus or in-person services or activities, Students may only recover if an express, written contract was formed by the attachments to appellant's amended complaint.

In comparing this case to the three cases from our sister courts referenced above, we find this case more closely resembles *Verdini* and *Rojas* and apply their rationales here. Much like this case, the plaintiff in *Verdini* sought a pro rata refund of fees due to a public college's alleged failure to offer in-person services for which the college charged fees pursuant to section 1009.23. *See Verdini*, 339 So. 3d at 417. Similarly, the plaintiff in *Rojas* sued a public university to recover "fees for on-campus services that were not provided to students." *Rojas*, 351 So. 3d at 1170. The First District in *Rojas* noted that to pierce the State's immunity, the plaintiff had to "identify an express written contract expressly addressing the University's obligation to provide such on-campus services" or point to "any language obligating the University to provide specific, on-campus services to any student during any specific time." *Id.* at 1170–71. Here, Students have not pointed to any language in the documents of record that can be read to "obligate [FAU] to a refund of fees when any such services are paused, limited, or outright cancelled." *See id.* at 1171; *Verdini*, 339 So. 3d at 419.

We do not find the Second District's decision in *Moore* applicable to this case for two reasons. First, the document under review in *Moore* contained different language than the one attached to Students' amended complaint. There, the statement provided that the plaintiffs were explicitly "entering a legal, binding contract with USF." *Moore*, 347 So. 3d at 549. Nothing similar is found in the FAU Statement of Responsibility, nor Students' tuition invoices. Second, the court in *Moore* opted to defer a decision on the merits of the application of sovereign immunity, finding the allegations of the complaint facially sufficient to state a cause of action and determining that the issue should be decided on summary judgment at the soonest. *Id.* However, the Second District did not address the application of *Florida Highway Patrol v. Jackson*, 288 So. 3d 1179, 1185 (Fla. 2020), where the Florida Supreme Court held sovereign immunity must be determined at the earliest possible stage of litigation to uphold separation of powers principles and judicial economy, or whether the documents enabled the court to do so at that stage of the proceedings. Although the Florida Supreme Court declined to review the Second District's decision, denial of review does not provide substantive guidance.

The fact that FAU is a state institution makes this case different from several other COVID-19 suits filed in other Florida jurisdictions. Many of those cases have allowed causes of action to proceed past the motion to dismiss stage because they involved private institutions and not state universities protected by sovereign immunity. *See Salerno v. Fla. S. Coll.*, 488 F. Supp. 3d 1211, 1213 (M.D. Fla. 2020) (finding the plaintiff stated a cause of action for breach of contract and unjust enrichment against a private college); *Rosado v. Barry Univ. Inc.*, 499 F. Supp. 3d 1152, 1160 (S.D. Fla. 2020); *Gibson v. Lynn Univ., Inc.*, 504 F. Supp. 3d 1335, 1337 (S.D. Fla. 2020); *In re Univ. of Miami COVID-19 Tuition and Fee Refund Litig.*, 524 F. Supp. 3d 1346, 1355 (S.D. Fla. 2021); *Rhodes v. Embry-Riddle Aeronautical Univ., Inc.*, 513 F. Supp. 3d 1350, 1357 (M.D. Fla. 2021).

Florida law recognizes that an actionable implied contract can exist between a student and a private university. *See John B. Stetson Univ. v. Hunt*, 102 So. 637, 640 (Fla. 1924) (stating that the relationship between a private school and a student is "solely contractual in character"); s*ee also Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342 (Fla. 4th DCA 2008) (recognizing a student's relationship with his university as an implied contract arising out of a university's rules, regulations, regimen and publications at the time of enrollment). Because this case involves a public university and not a private institution, our analysis about whether a viable cause of action exists is different. *See, e.g., Lafleur v. State Univ.*

8

*Sys. of Fla.*, No. 8:20-cv-1665-KKM-AAS, 2021 WL 3727832 (M.D. Fla. Aug. 2, 2021).

On this record, we agree with the lower court that the documents cited by Students do not constitute an express, written contract, and FAU's sovereign immunity is not waived. Based on the Florida Supreme Court's opinion in *Jackson*, we believe the trial court correctly decided the issue of sovereign immunity at the motion to dismiss phase—rather than deferring the decision to summary judgment—because the trial court was able to review the documents attached to Students' complaint for the existence of an express, written contract. *See Jackson*, 288 So. 3d at 1185. The plain language of FAU's Statement of Responsibility provides only an offer to allow Students to register for classes, which Students accepted by enrolling and paying the statutorily mandated tuition and fees.

Students concede they were permitted to enroll in courses at the university in exchange for paying their tuition and fees, which is FAU's only express obligation found in any of the documents submitted for review. No express contract was formed by the attachments to the complaint regarding what Students would receive in return for paying the statutorily mandated fees. *See Rojas*, 351 So. 3d at 1170–71. In fact, nothing in the attachments establish any contractual agreement to hold in-person classes or provide on-campus services at all, even though that was certainly a reasonable—albeit unenforceable—expectation. *See Verdini*, 339 So. 3d at 418.

In conclusion, Students have failed to identify an express, written contractual obligation for FAU to provide any on-campus or in-person services in exchange for their payment of the various fees listed in their Amended Complaint. *See id.*; *Rojas*, 351 So. 3d at 1170–71. Reasonable expectations based on implied agreements are not express, written contracts. *See Castro*, 279 So. 3d at 808 ("We are loath to adopt a rule of law that transforms general language in a retirement plan ordinance . . . into an express contractual duty . . . ."). Therefore, the trial court's dismissal of Students' breach of contract claim was proper.

2. Unjust Enrichment

A cause of action for unjust enrichment sounds in equity and is, by its nature, based on the existence of an implied contract between parties. *14th & Heinberg, LLC v. Terhaar and Cronley Gen. Contractors, Inc.*, 43 So. 3d 877, 880 (Fla. 1st DCA 2010). With no waiver of immunity for claims in equity, the state continues "to enjoy sovereign immunity from quasi-contractual claims such as unjust enrichment" even in its own courts.

9

*Veolia Water N. Am. - S., LLC v. City of Everglades City*, No. 2:18-cv-785-FtM-99UAM, 2019 WL 1921900 (M.D. Fla. Apr. 30, 2019); *see also Calderone v. Scott*, No. 2:14–cv–519–FtM–29CM, 2015 WL 1800315 (M.D. Fla. Apr. 16, 2015) (dismissing unjust enrichment claim with prejudice); *Llorca v. Rambosk*, No. 2:15–cv–17–FtM–29CM, 2015 WL 2095805 (M.D. Fla. May 5, 2015) (rejecting the plaintiff's claims of oral contract provisions and dismissing unjust enrichment claim with prejudice); *Fin. Healthcare Assocs., Inc. v. Pub. Health Tr. of Miami-Dade Cnty.*, 488 F. Supp. 2d 1231, 1236 (S.D. Fla. 2007) (holding claim based on implied contract barred by sovereign immunity). Thus, Students' unjust enrichment claim premised on a theory of implied contract is also barred due to sovereign immunity. *See id.* For these reasons, we also find no error in the trial court's dismissal of Students' unjust enrichment claim.

Conclusion

It is beyond dispute that the COVID-19 virus took a tremendous toll on society. Thousands of students lost a significant portion of their college experience as a result, and we are mindful of the fact that many others lost far more.[3] However, as the court in *Rojas* explained, we are powerless to redress some losses under the law:

> [I]f there were a sufficient contract attached to [this] complaint, we would affirm the trial court without hesitation. But without such an express, written agreement (and with no indication by the University that it consents to suit, nor any express statutory waiver by the Legislature to allow students such as [appellants] to proceed with these types of claims), sovereign immunity bars the action.

Therefore, we affirm the trial court's order granting FAU's motion to dismiss Students' complaint with prejudice for the reasons stated herein. Because we find no express, written contract exists sufficient to overcome FAU's defense of sovereign immunity, we do not reach the merits of the separation of powers issue. Finally, because state universities across Florida are facing similar lawsuits, we certify the following question of great public importance to the Florida Supreme Court as stated by the First District in *Rojas*:

---

[3] *See Norwegian Cruise Line Holdings Ltd. v. State Surgeon Gen., Fla. Dep't of Health*, 50 F. 4th 1126, 1156–58 (11th Cir. 2022) (Rosenbaum, J., dissenting) (describing COVID-19's death toll, potential long-term medical complications, and effects on commerce).

WHETHER SOVEREIGN IMMUNITY BARS A BREACH OF CONTRACT CLAIM AGAINST A STATE UNIVERSITY BASED ON THE UNIVERSITY'S FAILURE TO PROVIDE ITS STUDENTS WITH ACCESS TO ON-CAMPUS SERVICES AND FACILITIES?

*Affirmed.*

DAMOORGIAN and ARTAU, JJ., concur.

\*       \*       \*

***Not final until disposition of timely filed motion for rehearing.***

11