DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ANDREW MEDINA,**
Appellant,

v.

**ANDREW POLLACK** and **SHARA KAPLAN,** as co-personal
representatives of the **ESTATE OF MEADOW POLLACK,** decedent,
Appellees.

No. 4D19-777

[July 1, 2020]

Appeal of a non-final order from the Circuit Court for the Seventeenth
Judicial Circuit, Broward County; Patti Englander Henning, Judge; L.T.
Case No. CACE18-009607.

David S. Henry and Jordan M. Greenberg of Kelley Kronenberg, Fort
Lauderdale, for appellant.

David W. Brill and Joseph J. Rinaldi, Jr. of Brill & Rinaldi, The Law
Firm, Weston, and Joel S. Perwin of Joel S. Perwin, P.A., Miami Beach, for
appellees.

WARNER, J.

This appeal involves yet another issue emanating from the horrific
Parkland shooting in 2018. In this case, Medina, a campus security guard,
claims that the trial court erred in denying his motion to dismiss a civil
suit brought by the personal representative of a deceased student. He
claims that he is entitled to immunity under section 768.28(9), Florida
Statutes (2018), because his actions on the date of the incident were not
in willful and wanton disregard of human life. We have jurisdiction. *See*
Fla. R. App. P. 9.130(a)(3)(C)(x). We conclude that the allegations of the
complaint support a finding sufficient to avoid the sovereign immunity bar
of the statute. We thus affirm.

The complaint against Medina and other defendants was filed by the
parents of one of the murdered students at Parkland. In their amended
complaint, they presented a detailed timeline of events on the day of the
shooting. We detail the following allegations of the complaint.

On February 14, 2018, Nicholas Cruz took an Uber to Marjorie Stoneman Douglas High School in Parkland, Florida. The Uber driver dropped him off at approximately 2:19 p.m. Cruz exited the Uber with a soft, black rifle case.[1] Cruz was wearing a hat and Junior ROTC jacket from his days in the program while a student at Stoneman Douglas.

The Amended Complaint alleged Medina was one of the unarmed campus monitors on duty. Medina saw Cruz exit the Uber carrying a gun bag. He immediately recognized Cruz and described Cruz as "bee-lining [with] his head down [and] on a mission . . . walking with a purpose." Cruz looked at Medina, who was in a golf cart following him. Medina instantly knew Cruz, because the security staff had had a meeting about him the previous year. Cruz "had problems with everybody." Medina reported that "if there's gonna be anybody who's gonna come to this school and shoot this school up, it's gonna be that kid."

Medina "looped around" in his golf cart to follow Cruz, and Cruz was "picking up more speed" at that point. Medina called the other security guard on campus, David Taylor, on the school radio and warned that there was a "suspicious subject" on campus and that Taylor should "keep [his] eyes open" because the suspect was heading toward his building. Cruz apparently saw Medina and then ran towards Building 12.

Medina warned Taylor that Cruz was "coming in through the east side" of Building 12. At approximately 2:21 p.m., Cruz entered the building and began firing shots. After Cruz entered, Medina immediately got back into his golf cart and went to find Scot Peterson, the school resource officer and the only armed individual on campus. Medina also communicated over his radio that "there's some crazy shots going on." Medina heard "at least 15 bangs . . . [a]nd it was loud [and] surreal to really hear."

After arriving at Peterson's location, both Peterson and Medina got into Medina's golf cart and they headed back toward Building 12, arriving at approximately 2:23 p.m. At that time, they heard gunshots. Peterson told

---

[1] The allegations of the complaint are somewhat mixed on this point. In one place, the complaint alleges that it was a rifle bag, and in another Medina is quoted as saying that it didn't look like a gun bag. At the hearing, the parties agreed that the complaint could be amended to state that Medina reported that Cruz had a gun bag. From the allegations as well as the inferences to be drawn, we conclude that for the purposes of the motion to dismiss it must be assumed that Medina recognized that Cruz was carrying a rifle bag.

Medina to "get out of here," and "just go back to the front of the school." Peterson said, "we got a shooter . . . on . . . campus . . . ."

Within four minutes of exiting the Uber, Cruz had shot and killed nine people on the first floor of Building 12. He ultimately killed a total of seventeen students and faculty. At approximately 2:27 p.m., Cruz exited Building 12 undetected and was later arrested about two miles from campus.

The amended complaint alleges that "[c]hief among [Medina's] duties is to radio a Code Red the instant he perceives that someone poses a potential threat as an active shooter, the result of which transmission would result in the immediate lock down of all [s]chool buildings."

The complaint also sets forth Medina's explanation for not radioing a Code Red:

> I wasn't going to yell a code black or code red because I didn't – I didn't actually visualize a gun and I didn't really see the shots. So I'm not – you know, we've been doing this training at the school, you know. Don't yell it unless you, you actually get a good visual because you go code black, they shut the whole – you get a million – all those cops out there for nothing. Then I don't want to be the guy who calls that, you know.
>
> …
>
> [S]omething inside me told me not to approach him. Something told me not - don't - don't go - don't go running over there chasing – [Don't be no hero]. Yeah, something, something, something inside me just say report, like—like do what we've been taught. Report it.
>
> Because I was ready to go get him. Like, I was ready to go be the guy, just go get him. But then something - right when I was pulling up in the golf cart and then he looked back, something was, like, just let him go and report it and make sure your boy [Coach Taylor] inside is good. So that's when I got on the radio and say, hey, suspicious guy.

The complaint asserts that Medina "cared only about himself and his fellow coach." It further alleges that his stated reasons for not calling the Code Red were "unforgivably despicable," and a "willful and wanton disregard for the safety of the students and staff on [s]chool campus."

3

In summary, the complaint alleges that Medina breached his duty owed to the teachers and faculty of Stoneman Douglas by committing the following acts: (1) failing to call the Code Red; (2) failing to advise that Cruz was a threat; (3) failing to exercise reasonable care in the fulfillment of the duties he undertook to protect teachers and students; and/or (4) failing to follow the policies and procedures reasonably calculated to mitigate, reduce and/or eliminate the risk of injuries and harm during an active shooting. The complaint asserts that Medina's negligence was the cause of the death of the plaintiffs' daughter, and that Medina acted in bad faith, with a malicious purpose, or in a manner exhibiting a wanton and willful disregard of human rights, safety, or property.

Medina moved to dismiss the complaint against him based upon section 768.28(9), Florida Statutes, contending that as a matter of law the complaint failed to show that he acted in bad faith or in a manner exhibiting willful and wanton disregard of human rights. Following the hearing, the trial court denied the motion, specifically finding that: (1) the complaint sufficiently alleges that Medina illustrated a willful and wanton disregard for the safety of individuals; and (2) as a matter of law, Medina is not entitled to the protection of sovereign immunity under section 768.28(9), Florida Statutes. Medina appeals that ruling.

The sole issue on appeal is whether the trial court erred in determining that Medina is not entitled to immunity under section 768.28(9)(a). This Court's review is de novo. *See Keck v. Eminisor*, 104 So. 3d 359 (Fla. 2012); *City of Fort Lauderdale v. Israel*, 178 So. 3d 444 (Fla. 4th DCA 2015). "At this stage of review, [the appellate court is] bound to accept as true for purposes of decision the amended complaint's well-pleaded factual allegations and draw all reasonable inferences from these allegations in [the plaintiff's] favor." *Allen v. Frazier*, 132 So. 3d 361, 363 (Fla. 1st DCA 2014) (citations omitted). *See also Hollywood Lakes Section Civic Ass'n, Inc. v. City of Hollywood*, 676 So. 2d 500, 501 (Fla. 4th DCA 1996).

Section 768.28(9)(a), Florida Statutes provides:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

4

As applied to this case, we are required to consider whether Medina's conduct as alleged in the complaint can be considered wanton and willful.

In *Peterson v. Pollack*, 290 So. 3d 102, 109 (Fla. 4th DCA 2020), we discussed the definition of "wanton and willful disregard" in this statute. We applied the definition of those terms in the standard criminal jury instructions.

> Under those standard jury instruction definitions, "wanton" means "with a conscious and intentional indifference to consequences and with the knowledge that damage is likely to be done to persons or property." "Willful" means "intentionally, knowingly and purposely." *See, e.g.,* Fla. Std. Jury Instr. (Crim.) 7.9 (Vehicular or Vessel Homicide); Fla. Std. Jury Instr. (Crim.) 28.5 (Reckless Driving); Fla. Std. Jury Instr. (Crim.) 28.19 (Reckless Operation of a Vessel).

Applying that definition, we must determine whether Medina acted with conscious and intentional indifference to the consequences and with knowledge that damage is likely to be done to persons and that he acted knowingly and purposely.

We conclude that the allegations of the complaint are sufficient to survive the motion to dismiss. In a nutshell, the complaint states that Medina observed Cruz exit the Uber with a rifle case. Medina knew that Cruz had been identified as the one person who might shoot up the school at some point. Rather than immediately call a Code Red, which would have locked down the school and prevented Cruz's entry into any building, Medina radioed his friend in Building 12. His reason for not calling a Code Red was strictly personal to himself—he didn't want to be the "guy" who might call in a "million" cops there for nothing. "Something" told him not to do it. Instead, he allowed Cruz to cross the campus and enter Building 12, where the carnage began. Taken together, and knowing the extreme danger Cruz posed, Medina's actions, as alleged, can constitute conscious and intentional indifference to the consequences of his actions and that he knowingly and purposely failed to call the Code Red.

Medina contends that the timeline is too short for his actions to amount to wanton and willful conduct. Based upon the complaint, only two minutes passed from the time Medina saw Cruz exit the Uber to the time he entered Building 12. While that may seem short, it was clearly long enough, according to the allegations of the complaint, for Medina to contemplate what actions he should take and reason out why he should

5

not call the Code Red.  We cannot conclude from the complaint itself that the limited time prevented him from acting to protect the children and faculty from this known threat.

For the foregoing reasons, we affirm the denial of the motion to dismiss. While further fact development may ultimately convince a trier-of-fact that Medina's actions, or lack thereof, were not wanton and willful, the allegations of the complaint are sufficient to prevent dismissal of the complaint against Medina based upon section 768.28(9), Florida Statutes.

MAY and KUNTZ, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***